## ATLANTIC STATES LEGAL FOUNDATION, INC., Plaintiff,

v.

## TYSON FOODS, INC., Defendant (Two Cases).

Civ. A. Nos. 87–G–1390–S, 87–PT–1505–E.

United States District Court, N.D. Alabama, S.D.

March 4, 1988.

Eugene Rutledge and Clyde Riley, Rutledge & Kelly, Birmingham, Ala., David H. Pope, Carr, Tabb & Pope, Atlanta, Ga., for plaintiff.

H. Thomas Wells, Jr., and Alfred F. Smith, Jr., Maynard, Cooper, Frierson & Gale, P.C., Birmingham, Ala., Mike Mashburn, Fayetteville, Ark., for defendant.

## MEMORANDUM OPINION

GUIN, District Judge.

These actions have been consolidated for consideration of the standing issue. The

plaintiff in both actions is Atlantic States Legal Foundation, Inc. (hereinafter "ASLF"), which is a non-profit corporation organized under the laws of the State of New York. ASLF is a membership organization dedicated to protecting and restoring the water resources in the states in which it has members. ASLF has members in the State of Alabama whose rights, it alleges, are and will be adversely affected. The defendant in both actions is Tyson Foods, Inc. (hereinafter "Tyson"). Each action is a citizen suit brought pursuant to Section 505 of the Federal Water Pollution Control Act, (hereinafter "Clean Water Act"), 33 U.S.C. § 1365. The question before the court is whether the plaintiff has standing to bring these actions.

Citizen suits are provided for by the Clean Water Act. The pertinent section is 33 U.S.C. § 1365(a) which provides as follows:

Except as provided in subsection (b) of this section and section 1319(g)(6) of this title, any citizen may commence a civil action on his own behalf—

(As amended February 4, 1987.)

I. SECTION 1319(g)(6) DEPRIVES THE PLAINTIFF OF STANDING TO PROSECUTE CV 86–PT–1505–E.

Tyson argues that 33 U.S.C. § 1319(g)(6) precludes the maintenance of CV 87–PT–1505–E. Section 1319(g)(6) provides in pertinent part as follows:

[A]ny violation—

(ii) with respect to which a State has commenced and is diligently prosecuting an action under a State law comparable to this subsection, ...

shall not be the subject of a civil penalty action under ... section 1365 of this title. 33 U.S.C. § 1319(g)(6) (as amended February 4, 1987).

"This subsection" refers to section 1319(g) which authorizes the imposition of administrative penalties in appropriate cases. Alabama has a law comparable to that subsection. Section 22–22A–5(18) provides for the imposition of civil penalties by the Alabama Department of Environmental Management (hereinafter "ADEM").

Therefore, the diligent prosecution of an action under Ala. Code § 22–22A–5(18) with respect to the violations in question would operate to remove the plaintiff's standing to bring these actions.

Such an action exists with respect to CV 87–PT–1505–E, which involves Tyson's Heflin plant. The Heflin plant has been the subject of an administrative order issued by ADEM. (A true and correct copy of that order is attached to the affidavit of Ken Nix.) That order involved the same permit involved in CV 87–PT–1505–E. The administrative order required Tyson to begin construction of wastewater treatment facilities sufficient to remove the violations not later than June 15, 1987, and to attain compliance with the terms of the permit not later than December 15, 1987. The order provides that Tyson's failure to comply with its provisions would subject it to the imposition of "civil penalties, criminal fines, or other appropriate relief."

ASLF asserts that the administrative order is insufficient to prevent the maintenance of a citizen suit for any one of three reasons. First, ASLF asserts that the order does not preclude citizen suits arising from violations occurring after November 1986. ASLF argues that the administrative order only dealt with the violations listed in finding of fact number five. Those violations occurred during the period from August through November 1986. However, the administrative order is clearly addressed to future violations of the permit in question. The violations in finding of fact number five are only illustrative of the poor compliance history at the Heflin plant. The order itself is clearly prospective in nature in that it contemplates the construction of additions to the wastewater treatment facilities at the Heflin plant sufficient to bring the plant into compliance, thereby eliminating future violations. It also acknowledges the existence of violations prior to August 1986 by Spring Valley Foods, Inc., the predecessor of Tyson. Therefore, it is clear that the order is intended to address the violations that ASLF seeks to make the subject of its citizen suit.

Second, ASLF argues that the administrative order does not represent a diligent prosecution by ADEM. ASLF argues that the administrative order merely constitutes an extension of an existing deadline. This is, however, not the case. The order requires Tyson to construct a wastewater treatment facility sufficient to bring the plant into compliance with the terms of the permit. Tyson has expended approximately $1.8 million in making the required modifications in its wastewater treatment facilities. (See Ken Nix's affidavit.) The order leaves open the prospect of civil penalties and other appropriate relief in the event Tyson fails to comply with the requirements of the order. In light of the recent purchase of Spring Valley Foods, Inc., by Tyson, the administrative order clearly represents "diligent prosecution" on the part of ADEM. To characterize the administrative order in question as simply an extension of the violator's deadline comes precariously close to constituting a sanctionable violation of Rule 11 of the Federal Rules of Civil Procedure.

The third reason argued by ASLF, and the one it views as the most important, involves the wording of the administrative order itself. ASLF argues that the administrative order itself permits the maintenance of appropriate actions against Tyson. The wording relied on by ASLF is as follows:

> [T]he issuance of this order does not preclude the department or others from seeking civil penalties ... against Tyson for the violations stated herein.

This language does not override the language of section 1319(g)(6)(A)(ii). If the State is diligently prosecuting an action under a comparable state law, that section bars a citizen suit. There is no provision for the removal of that bar in the event an administrative order issued by the state agency purports to allow a citizen suit. Section 1319(g)(6) is supreme to any administrative order issued by a state agency. Therefore, even if the administrative order in question is in fact intended to avoid the bar set up by section 1319(g)(6), it can have no such effect.

None of the reasons offered by ASLF for the nonapplication of section 1319(g)(6) as a bar to suit is meritorious. Therefore, with respect to the Heflin plant, the state had commenced and was diligently prosecuting an action under a state law comparable to section 1319(g) at the time CV 87–PT–1505–E was filed. Accordingly, no suit may be brought against Tyson with respect to that plant and the plaintiff is without standing to assert such suit.

At the motion docket, counsel for ASLF cited the court to *Friends of the Earth v. Consolidated Rail Corp.*, 768 F.2d 57 (2d Cir.1985), which had held an administrative action insufficient to prevent a citizen suit. Counsel advised the court that the case might be of little precedential value in the instant case because it was decided prior to the enactment of 33 U.S.C. § 1319(g)(6). Counsel's caution to the court was greatly appreciated and his fears well founded. In that case the court was asked to interpret 33 U.S.C. § 1365(b)(1)(B) which provides that no action may be commenced under section 1365 if the state "has commenced and is diligently prosecuting a civil or criminal action *in a court* of the United States or a State ..." (emphasis added). The pertinent provision of section 1319(g)(6) speaks only of prosecution of "an action under a State law comparable to this subsection." The crucial phrase "in a court" is not found in section 1319(g)(6). Presumably this evinces an intention on the part of Congress to avoid the result in *Consolidated Rail*.

In addition, the wording of section 1319(g)(6) is clearly intended to prevent the bringing of a citizen suit if a state administrative action is being diligently prosecuted. Section 1319(g), the subsection referenced, deals with administrative penalties. Therefore, a state administrative action under a similar state law is clearly sufficient, such action being under a state law comparable to subsection (g) of section 1319.

This court's interpretation of section 1319(g)(6) is bolstered by the recent decision of the Supreme Court in *Gwaltney of Smithfield Ltd. v. Chesapeake Bay Foun-*

*dation, Inc.,* 484 U.S. ——, 108 S.Ct. 376, 98 L.Ed.2d 306 (1987). The Court, in support of its conclusion that section 505 of the Clean Water Act did not permit citizen suits for wholly past violations, reasoned as follows:

> If citizens could file suit, months or years later, in order to seek the civil penalties that the Administrator chose to forgo, then the Administrator's discretion to enforce the Act in the public interest would be curtailed considerably. The same might be said of the discretion of state enforcement authorities. [The allowance of such suits] would change the nature of the citizens' role from interstitial to potentially intrusive. We cannot agree that Congress intended such a result.

484 U.S. at ——, 108 S.Ct. at 383, 98 L.Ed. 2d at 319. The same policy considerations strongly support this court's holding. In the instant case, exactly the sort of administrative discretion championed by the Court in *Gwaltney* is involved. ADEM, in exercising its discretion, required Tyson to make costly changes to its Heflin wastewater facility in lieu of the immediate imposition of fines. This discretion should not be threatened by the risk of citizen suits when ADEM is diligently pursuing an administrative solution to the pollution problem at the Heflin plant.

For these reasons, ASLF is without standing to prosecute CV 87–PT–1505–E. The allowance of plaintiff's amendment to the complaint does not affect this determination. (See discussion of plaintiff's motion to amend *infra* p. 1189–90). Accordingly, that action will be dismissed, the suit being prohibited by 33 U.S.C. § 1319(g)(6).

## II. CV 87–G–1390–S SHOULD BE STAYED UNTIL THE WASTEWATER FACILITY AT TYSON'S BLOUNTSVILLE PLANT BECOMES FULLY OPERATIONAL.

■ The court has reviewed the pertinent portions of the record and concludes that ASLF has shown that certain of its members would have standing to sue in their own right. Therefore, the require-

ments of associational standing are present. However, this is not the only hurdle to ASLF's standing to bring a citizen suit under the Clean Water Act. The Supreme Court recently considered the scope of the jurisdictional grant contained in 33 U.S.C. § 1365.

Subsequent to the filing of CV 87–G–1390–S and CV 87–PT–1505–E, the Supreme Court decided *Gwaltney of Smithfield Ltd. v. Chesapeake Bay Foundation, Inc.,* 484 U.S. ——, 108 S.Ct. 376, 98 L.Ed. 2d 306 (1987). The Court in *Gwaltney* held that in order to invoke jurisdiction under section 505 of the Clean Water Act a plaintiff must make a good-faith allegation of ongoing violation by the defendant. 484 U.S. at ——, 108 S.Ct. at 381, 98 L.Ed.2d at 317 ("The most natural reading of 'to be in violation' is a requirement that citizen-plaintiffs allege a continuous or intermittent violation—that is, a reasonable likelihood that a past polluter will continue to pollute in the future."). The Court also made it clear that the plaintiff need only *allege* an ongoing violation in order to invoke the jurisdiction of the court. 484 U.S. at ——, 108 S.Ct. at 385, 98 L.Ed.2d at 322.

In light of that decision, this court allowed the plaintiff until January 4, 1988, to amend its complaints so as to conform to the requirements of *Gwaltney.* ASLF filed a motion to amend its complaints in CV 87–G–1390–S and CV 87–PT–1505–E, with amendments attached, on January 4, 1988. Under Rule 15(a) of the Federal Rules of Civil Procedure, the amendments could have been filed without leave of court —no responsive pleadings having been filed in either case. *See* Fed.R.Civ.Proc. 7(a); *Zaidi v. Ehrlich,* 732 F.2d 1218, 1220 (5th Cir.1984) ( [N]either a motion to dismiss nor a motion for summary judgment extinguishes a plaintiff's right to amend a complaint."). *But see In re Watauga Steam Laundry,* 7 F.R.D. 657, 659 (E.D. Tenn.1947) ("[B]y their elected procedure, the petitioners had waived their right to amend without leave ...". Accordingly, the motion for leave to amend should be stricken and the amendments deemed filed on January 4, 1988.

Plaintiff's amendment alleges that "[d]efendant is still not complying with its NPDES permit," and that "[t]here is a reasonable likelihood that defendant will continue to pollute in the future." This is all that *Gwaltney* requires in order to invoke jurisdiction under section 505 of the Clean Water Act. 484 U.S. at ——, 108 S.Ct. at 381, 98 L.Ed.2d at 317. Therefore, ASLF has standing to prosecute CV 87–G–1390–S.

■ However, as the Court in *Gwaltney* recognized, if at some point in the litigation the allegations of an ongoing violation are demonstrated to be without merit, summary judgment in favor of the defendant on the standing issue would be appropriate, 484 U.S. at ——, 108 S.Ct. at 385, 98 L.Ed.2d at 322. Additionally, if it is demonstrated that the allegations of an ongoing violation were made in violation of Rule 11 of the Federal Rules of Civil Procedure, sanctions under that Rule would be indicated.

*Gwaltney* also recognized the possibility that the action might at some point become moot because the defendant begins to comply with the act. An extensive quotation on that issue is warranted.

Petitioner also worries that our construction of § 505 would permit citizen-plaintiffs, if their allegations of ongoing noncompliance become false at some later point in the litigation because the defendant begins to comply with the Act, to continue nonetheless to press their suit to conclusion. According to petitioner, such a result would contravene both the prospective purpose of the citizen suit provisions and the "case or controversy" requirement of Article III. Longstanding principles of mootness, however, prevent the maintenance of suit when " 'there is no reasonable expectation that the wrong will be repeated.' " ... Mootness doctrine thus protects defendants from the maintenance of suit under the Clean Water Act based solely on violations wholly unconnected to any present or future wrongdoing....

484 U.S. at ——, 108 S.Ct. at 386, 98 L.Ed. 2d at 322–23 (citations omitted). This is in keeping with the prospective focus of section 505. Section 505 was enacted to allow citizen suits for the purpose of abating pollution. *See* 484 U.S. at ——, 108 S.Ct. at 383, 98 L.Ed.2d at 319–20. When the pollution has ceased, the action is moot and it is doubtful whether civil penalties may be recovered in such a case. *See* 484 U.S. at ——, 108 S.Ct. at 382, 98 L.Ed.2d at 318 ("[C]itizens ... may seek civil penalties only in a suit brought to enjoin or otherwise abate an ongoing violation.").

The affidavit of Mark Waller indicates that Tyson spent $2.5 million in upgrading the wastewater facility at its Blountsville plant, that the upgraded system is essentially completed, and that the upgraded system was placed in initial operation on December 17, 1987. His affidavit also states that when fully completed, the upgraded system should eliminate violations of Tyson's permit limits at that plant. Therefore, it appears likely that CV 87–G–1390–S will be rendered moot when that upgraded system is fully operational. For this reason, the court is of the opinion that CV 87–G–1390–S should be stayed until such time as the effectiveness of the upgraded wastewater facility at Tyson's Blountsville plant can be evaluated.

The court also feels compelled to note that an award of attorney's fees under section 1365(d) may well prove to inappropriate. ASLF will have great difficulty in establishing itself as a prevailing or substantially prevailing party, for it appears on the present record that Tyson had undertaken to make the changes in its Blountsville plant prior to the filing of the instant action.

An appropriate order will be entered contemporaneously herewith.

## ORDER

The above-styled causes have been consolidated for consideration of the standing question common to both cases. The matter was heard at the court's regularly scheduled motion docket and the court has considered the pleadings, submissions and argument of counsel, and pertinent portions of the record. In conformity with the

memorandum opinion entered contemporaneously herewith, it is

ORDERED, ADJUDGED and DECREED that plaintiff's motion to amend in CV 87–PT–1505–E be and it hereby STRIKEN and the amendment be deemed filed as of the date of the motion to amend. It is

FURTHER ORDERED, ADJUDGED and DECREED that CV 87–PT–1505–E be and it hereby is DISMISSED for lack of standing. It is

FURTHER ORDERED, ADJUDGED and DECREED that defendant's motion to dismiss in CV 87–G–1390–S be and it hereby is OVERRULED; that plaintiff's motion to amend be and it hereby is STRIKEN and the amendment be deemed filed as of the date of the filing of the motion to amend; and that the action is hereby STAYED until further order of this court. The defendant shall not be required to serve its answer to the complaint until 30 days after the stay of proceedings is lifted.