**NORTH AND SOUTH RIVERS WATERSHED ASSOCIATION, INC., Plaintiff,**

v.

**TOWN OF SCITUATE, Defendant.**

Civ. A. No. 89–2405–T.

United States District Court,
D. Massachusetts.

Jan. 31, 1991.

Gary Domet Thomas, Kelly, Kethro, Flannigan & Thomas, Hanover, Mass., for plaintiff.

John W. Giorgio, Kopelman & Paige, P.C., Boston, Mass., for defendant.

## MEMORANDUM

TAURO, District Judge.

Plaintiff North and South Rivers Watershed Association, Inc., a non-profit membership organization, brings this action against the defendant, the Town of Scituate (the "Town"), alleging that the Town has been discharging pollutants from its sewage treatment facility (the "Facility") in violation of the Clean Water Act, 33 U.S.C. §§ 1251—1376 (the "Federal Act"). In particular, plaintiff contends that the Town has been releasing overflow sewage from the Facility into the North River estuary system without a National Pollutant Discharge Elimination System ("NPDES") permit.

In response, the Town has moved for summary judgment, arguing that the Federal Act bars any citizen suit which addresses a violation of that Act "with respect to which a State has commenced and is diligently prosecuting an action under a State law comparable to [the administrative penalties subsection of the Federal Act]." 33 U.S.C. § 1319(g)(6).[1] The Town maintains that Administrative Order No. 698 (the "Order"), issued by the Massachusetts Department of Environmental Protection ("DEP") to the Town on April 13, 1987 pursuant to a provision of the Massachusetts Clean Waters Act (the "Massachusetts Act"), M.G.L. ch. 21, § 44, constitutes a "comparable" action that bars this lawsuit. Plaintiff, on the other hand, contends both that the Order is not an action under a comparable state law, and that the DEP is not diligently prosecuting the Order.

## I

### Comparable State Law

■ Plaintiff first argues that the Order does not constitute an action under a state law comparable to Section 1319(g). Plaintiff suggests that the Massachusetts Act cannot qualify as a comparable state law unless the United States Environmental Protection Agency ("EPA") has sanctioned the permit approval system created by that Act. Plaintiff bases this interpretation on comments by Senator John Chafee, the principal author and sponsor of the 1987 Amendments to the Federal Act, who maintained that the Federal Act's limitation on citizen suits applies "only in cases where the State in question has been authorized under Section 402 to implement the relevant permit program." 113 Cong.Rec. S737 (daily ed. Jan. 14, 1987).[2] Because the EPA has not delegated its permit authority to Massachusetts, plaintiff argues, an ac-

tion under the Massachusetts Act cannot bar a citizen suit under the Federal Act.

While it is true that, in construing a statute, a court often pays special attention to the statements of its drafter and sponsor, *see Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 205, 96 S.Ct. 1375, 1386, 47 L.Ed.2d 668 (1976); *United States v. United Mine Workers of America*, 330 U.S. 258, 276–280, 67 S.Ct. 677, 687–89, 91 L.Ed. 884 (1947), the Supreme Court has warned that "reliance on legislative history in divining the intent of Congress is ... a step to be taken cautiously." *Piper v. Chris–Craft Industries*, 430 U.S. 1, 26, 97 S.Ct. 926, 941, 51 L.Ed.2d 124 (1977). The Court has also repeatedly declared that statements by an individual legislator, even the sponsor, should not be given controlling effect, particularly when they are not consistent with statutory language. *See Brock v. Pierce County*, 476 U.S. 253, 263, 106 S.Ct. 1834, 1840, 90 L.Ed.2d 248 (1986); *Chrysler Corporation v. Brown*, 441 U.S. 281, 311, 99 S.Ct. 1705, 1722, 60 L.Ed.2d 208 (1979). In this instance, there is nothing in the text of the Federal Act to support Senator Chafee's interpretation. The Federal Act mandates simply that the state law in question be "comparable." *See* 33 U.S.C. § 1319(g)(6). Nowhere is there any suggestion of an additional requirement that the state program have received federal approval. This court, therefore, concludes that Senator Chafee's statement cannot be considered as dispositive with respect to the issue of Congressional intent.

■ A state law that is "comparable" within the meaning of the Federal Act "must include provisions as to public notice and participation, penalty assessment, judicial review, and other matters comparable

---

1. Plaintiff has also moved for summary judgment, and the Town has raised the identical argument in its opposition. Because the controlling issues are the same in both motions, this court will, for ease of analysis, refer solely to the Town's motion.

2. Senator Chafee further commented:
   [I]f a nonauthorized State takes action under State law against a person who is responsible

for a discharge which also constitutes a violation of the Federal permit, the State action cannot be addressed to the Federal violation, for the State has no authority over the Federal permit limitation or condition in question. In such case, the authority to seek civil penalties for violation of the Federal law ... would be unaffected....

113 Cong.Rec. S735 (daily ed. Jan. 14, 1987).

to those in § 1319(g)." *Atlantic States Legal Foundation, Inc. v. Universal Tool & Stamping Co., Inc.*, 735 F.Supp. 1404, 1415 (N.D.Ind.1990). Referring to this standard, plaintiff points out that the DEP issued the Order pursuant to its authority under M.G.L. ch. 21, § 44, a section that does not authorize civil penalties. Plaintiff notes further that the DEP did not bring an action for civil damages under ch. 21, § 42, a statutory provision that does authorize such penalties. Plaintiff concludes that § 44 is the "state law" under which the DEP issued the Order and that § 44 is not comparable to the Act, because it lacks penalty assessment provisions.

Plaintiff's reasoning, however, ignores the relationship between sections 42 and 44. The two are coordinate parts of the Massachusetts Act, which is a comprehensive statutory scheme for the protection of the Commonwealth's waterways. The proper method for determining whether the DEP issued the Order under a comparable state law is not to parse the statute to identify which of its many powers the DEP invoked at a particular time. Rather, it is enough that the Massachusetts statutory scheme contains penalty assessment provisions equivalent to those in the Federal Act. Although the DEP has not yet chosen to employ these penalty assessment provisions in the instant Order, that election does not change the fact that the statutory scheme under which the DEP acts is comparable.[3]

Although plaintiff also highlights some relatively minor differences between the public notice and participation provisions in the Federal and Massachusetts Acts, the two acts are, nonetheless, sufficiently similar for this court to term them comparable. The Federal Act requires the EPA Administrator to "provide public notice of and reasonable opportunity to comment on" any order assessing a civil penalty before it may be issued. 33 U.S.C. § 1319(g)(4)(A). If the Administrator does not hold a hearing before issuing an order assessing a penalty, then any person who has commented on the proposed assessment may petition the Administrator within 30 days to set aside the order and to provide a hearing on the penalty. 33 U.S.C. § 1319(g)(4)(C). If the petition presents material evidence not considered in the issuance of the order, then the Administrator or Secretary must immediately set aside the order and provide a hearing. *Id.*

Although the Massachusetts Act does not provide for prior public notice, the Order is a public document. *See* M.G.L. ch. 4, § 7. Upon a showing of good cause, any individual may intervene in any subsequent adjudicatory proceeding brought to assess a civil penalty. 310 CMR § 1.01(9)(a). Moreover, any group of ten or more individuals may intervene in any adjudicatory proceeding concerning an allegation of damage to the environment. M.G.L. ch. 30A, § 10A; 310 CMR § 1.01(9)(f). While not identical, these provisions do provide for "comparable" public participation.

## II

### Diligent Prosecution

■ Plaintiff also contends that, even if the Order constitutes a state action under a comparable state law, the Order does not rise to the level of diligent prosecution. According to plaintiff, a state enforcement action constitutes "diligent prosecution" only if the action, at a minimum, orders compliance with the Federal Act by a date certain, in accordance with a timetable against which compliance may be measured, and provides civil penalties for viola-

---

**3.** Plaintiff also suggests that the penalty provisions are not comparable because the Federal Act specifies factors for determining a penalty amount, but the Massachusetts Act does not. *See Universal Tool,* 735 F.Supp. at 1416 (noting absence of provision listing such factors as one reason for finding Indiana statutes not comparable to Federal Act). Again, plaintiff views Massachusetts's environmental protection statutes too narrowly. Although M.G.L. ch. 21, § 42 does not designate criteria, M.G.L. ch. 21A and 310 CMR § 5.25 carefully detail factors to consider in assessing environmental penalties generally. Because the DEP may properly use these statutes as a reference in assessing a penalty, the penalty assessment provisions under the Massachusetts Act are sufficiently defined for this court to deem them comparable to those in the Federal Act.

tions. Congress's express intent "to recognize, preserve, and protect the primary responsibilities and rights of the States to prevent, reduce, and eliminate pollution," 33 U.S.C. § 1251(b), cautions against so confining an interpretation. Indeed, the statute calls for a more deferential approach that does not circumscribe the administrator's discretion to implement a plan that, in his expert judgment, adequately addresses a violation. *See Gwaltney of Smithfield v. Chesapeake Bay Foundation,* 484 U.S. 49, 60, 108 S.Ct. 376, 383, 98 L.Ed.2d 306 ("citizen suit is meant to supplement rather than to supplant governmental action"). *Cf. Williams Pipe Line v. City of Mounds View,* 704 F.Supp. 914, 918 (1989) (construing identical citizen suit preclusion language in Hazardous Liquid Pipeline Safety Act of 1979, 49 U.S.C. §§ 2001–2014, to indicate that "[w]here the agency has considered the specific concerns raised in the citizen suit, deference to its decision is particularly appropriate").

The Order in this case requires the Town to "take all steps necessary to plan, design, and construct facilities necessary to adequately treat and dispose of all wastewater collected by the Town's sewerage system to meet [state and federal discharge requirements]." *See* Affidavit of Robert M. Cady, Exhibit A at 4.[4] The Order then develops a timetable for the plans, bans (with certain enumerated exceptions) connections to or extensions of the Town's sewer system, and mandates design and construction of ground water monitoring wells. *See id.* It also expressly leaves open the possibility of future criminal or civil penalties. *See id.* Because this Order represents a substantial, considered and ongoing response to the violation, this court finds that the DEP's enforcement action does in fact represent diligent prosecution. *Cf. Atlantic States Legal Foundation v. Tyson Foods,* 682 F.Supp. 1186, 1188 (N.D. Ala.1988), *rev'd on other grounds,* 897

F.2d 1128 (11th Cir.1990) (order requiring construction of treatment facility sufficient to bring plant into compliance with permit and leaving open the prospect of civil penalties clearly represents diligent prosecution).

## III

### *Conclusion*

The DEP has commenced and is diligently prosecuting an action under a State law comparable to 33 U.S.C. § 1319(g) with respect to the Town's alleged violation of the Federal Act. Plaintiff has brought this civil penalty action under 33 U.S.C. § 1365 with respect to that same violation. Because 33 U.S.C. § 1319(g)(6)(A) provides that the same violation shall not be the subject of a civil penalty action under § 1365, defendant's motion for summary judgment is ALLOWED, and plaintiff's motion for summary judgment is DENIED.

---

**4.** Specifically, the Order refers to "the discharge requirements of 314 CMR § 5.00 for discharge to the grounds or the requirements of 314 CMR § 3.00 and 314 CMR § 4.04(6) for discharge to surface waters." Because 314 CMR § 3.00 provides that "[its] provisions not only reflect the requirements of the State Act, but also imple-

ment those provisions of the Federal Act and regulations adopted thereunder necessary for the Division to assume delegation from the EPA to implement the NPDES permit program within the Commonwealth," 314 CMR § 3.01, the DEP effectively ordered compliance with both state and federal standards simultaneously.