**NORTH AND SOUTH RIVERS WATERSHED ASSOCIATION, INC., Plaintiff, Appellant,**

v.

**TOWN OF SCITUATE, Defendant, Appellee.**

No. 91–1255.

United States Court of Appeals, First Circuit.

Heard Aug. 2, 1991.

Decided Nov. 27, 1991.

Rehearing and Rehearing En Banc Denied Jan. 14, 1992.

Gary D. Thomas with whom Kelly, Kethro, Flannigan & Thomas, Hanover, Mass., Peter Shelley, Darshan Brach, Conservation Law Foundation and Jonathan Kaledin, Boston, Mass., were on brief, for appellant.

Catherine M. Flanagan with whom Richard B. Stewart, Asst. Atty. Gen., Anne H. Shields, Anne S. Almy, and Nancy K. Stoner, Attys., Dept. of Justice, Environment & Natural Resources Div., and Mary St. Peter, Office of Enforcement, U.S. E.P.A., Washington, D.C., were on brief for U.S., amicus curiae.

Charles C. Caldart, National Environmental Law Center, Kenneth L. Kimmell and Bernstein and Bronstein, Boston, Mass., on brief, for Massachusetts Public Interest Research Group, Massachusetts Student Public Interest Research Group and Natural Resources Defense Council, amici curiae.

John W. Giorgio with whom Brian W. Riley and Kopelman and Paige, P.C., Boston, Mass., were on brief, for appellee.

Before TORRUELLA, Circuit Judge, HILL,[*] Senior Circuit Judge, and SELYA, Circuit Judge.

HILL, Senior Circuit Judge.

Appellant appeals from district court granting of Appellee's motion for summary judgment, claiming the district court erred in ruling Appellant's suit was barred under section 309 of the Federal Clean Water Act. Because the State had commenced and was diligently prosecuting an enforcement action under State law comparable to the Federal Act Appellant sought to enforce, we AFFIRM the district court's ruling that Appellant is barred under the Federal Clean Water Act section 309(g)(6)(A) and granting of Appellee's motion for summary judgment.

## I.  BACKGROUND

In 1987, the Massachusetts Department of Environmental Protection ("DEP") issued Administrative Order Number 698 to the Appellee town of Scituate.  The State alleged that Scituate owned and operated a sewage treatment facility that was discharging pollutants into a coastal estuary without a federal discharge permit.  DEP ordered Scituate to (1) immediately prohibit any new connections to its sewer system; (2) take all steps necessary to plan, develop and construct new wastewater treatment facilities; and (3) begin extensive upgrading of the facility subject to DEP's review

[*] Of the Eleventh Circuit, sitting by designation.

and approval at interim stages of the planning, designing, and construction phases.[1]

DEP was operating under its authority found in the Massachusetts Clean Waters Act (the "State Act"), M.G.L. ch. 21, § 44, which closely parallels the Federal Water Pollution Control Act (the "Federal Clean Water Act"), 33 U.S.C. § 1251 *et seq.*[2] Pursuant to its authority provided in the State Act, DEP is authorized to assess civil penalties not to exceed $25,000 a day against violators of the State Act; penalties which closely parallel the penalty provisions of the Federal Clean Water Act. *See* M.G.L. ch. 21, § 42; 33 U.S.C. § 1319(g). The State elected not to assess penalties against Scituate at the time of issuing its Order, but did reserve the right to do so at a later date.[3]

Since receiving the Order, Scituate has engaged the services of the engineering firm of Metcalf & Eddy, Inc., to effectuate compliance with the State Order. In May of 1987, Metcalf & Eddy submitted the study plans required by Administrative Order Number 698 to the State. In March of 1988, Scituate submitted an application for State financial assistance requesting over three quarters of a million dollars in funding to assist in the upgrading of the town's wastewater treatment facilities. In January of 1989, Metcalf & Eddy submitted a draft of the interim report for the supplemental facilities plan to the State. This report contained detailed analysis of the proposed alternatives for wastewater treatment, effluent disposal, and sludge management at the facility. The report explained that some effluent disposal alternatives were cost prohibitive and offered four alternatives which would be pursued for sludge processing and disposal. Based in part on these reports, the DEP informed Scituate in November of 1989 that it would not allow land disposal of effluent due to the lack of land sites adequate in size and that alternatives should be pursued. In July of 1990, Metcalf & Eddy submitted the draft of the final plan for upgrading the existing wastewater facility, which contained detailed analysis and cost comparisons of proposed discharge methods.

In 1989, Appellant citizen group brought suit in the district court, charging the Appellee with violation of the Federal Clean Water Act.[4] Appellant sought civil penalties as well as declaratory and injunctive relief. Appellant also sought the costs and expenses of the action, including attorney's fees.

Appellant's charges were based on the same discharge violations as the State's Order, which, at some level, had been ongoing since the issuance of Administrative Order Number 698. Appellant's lawsuit

1. Specifically, the Order contained the following requirements:

> (1) The Town was required to submit to the DEP for approval a study plan for collecting data and evaluating alternative methods for upgrading wastewater treatment and disposal by June 1, 1987. The Order also required the town, within one year of approval of the study plan, to submit, for DEP approval, a final plan for upgrading the facility.
>
> (2) Effective April 13, 1987, the Town was ordered to prohibit any new connections to or extensions of the Town's sewer system, subject to certain narrow exceptions.
>
> (3) By July 1, 1987, the Town was required to submit design plans for ground water monitoring wells, and to install the wells within ninety (90) days of DEP's approval of the plans. The Order detailed the testing to be performed from these wells, and in the drainage ditch leading to the estuary, and ordered that monthly reports of the testing be submitted to the DEP.

2. "The provisions of [the Massachusetts Code regulating pollution discharges to surface waters of the State] not only reflect the requirements of the State Act, but also implement those provisions of the Federal Act and regulations adopted thereunder."
13 C.M.R. 3.01

3. M.G.L. ch. 21, § 44 provides, in pertinent part:
"(1) Issuance of an order under this paragraph shall not be deemed an election [by the State] to forgo any action for criminal or civil penalties under Section 42."

4. Section 301(a) provides in pertinent part:
"Except as in compliance with this section and [other sections of the Act that establish various prohibitions and conditions on discharges; notably including the requirement for a National Pollution Discharge Elimination System (NPDES) permit under § 402], the discharge of any pollution by any person shall be unlawful."
33 U.S.C. § 1311(a).

was brought under section 505 of the Federal Clean Water Act, which provides a jurisdictional basis for citizens to enforce the Act.[5]

The district court denied Appellant's motion for summary judgment and granted Appellee's motion for summary judgment, dismissing Appellant's claim. The Court ruled Appellant's suit was barred by section 309(g)(6)(A) of the Federal Act, *see North & South Rivers Watershed Assoc., Inc. v. Town of Scituate*, 755 F.Supp. 484 (D.Mass.1991), which states that a citizen's suit for penalties under section 505 is barred if the State "has commenced and is diligently prosecuting an action under a state law comparable to" the administrative penalties subsection of the Act. *See* 33 U.S.C. § 1319(g)(6)(A).

Appellant brings this appeal, claiming that the district court erred in dismissing the Appellant's civil suit. Appellant argues the section 309(g)(6)(A) limitation does not apply because the State did not commence and diligently prosecute a comparable civil penalty action. In the alternative, Appellant asserts that, even if the section 309(g)(6)(A) bar does apply, it extends only to Appellant's civil penalty action and not to the declaratory and injunctive relief sought.

## II. APPELLANT'S CLAIMS

■ Appellant claims that the district court erred in ruling that the 1987 Massachusetts DEP Administrative Order constitutes a bar under the provisions of section 309 of the Federal Clean Water Act. On summary judgment, our review of the district court's determination that there is no material factual dispute is *de novo. See Lussier v. Louisville Ladder Co.*, 938 F.2d 299, 300 (1st Cir.1991). We view the facts in the light most favorable to the nonmov-

ing party, here the Appellant. *See Oliver v. Digital Equipment Corp.*, 846 F.2d 103, 105 (1st Cir.1985).

### A. Comparability

■ The bar against citizen's civil penalty suits only operates where the State has brought an action comparable to subsection 309(g). *See* 33 U.S.C. § 1319(g)(6)(A)(ii). Appellant argues this means that a citizen's suit for penalties is only barred when a previously brought state action seeks to sanction an offender monetarily. For the reasons given below, we disagree.

■ The primary function of the provision for citizen suits is to enable private parties to assist in enforcement efforts where Federal and State authorities appear unwilling to act. Congress has found it necessary expressly to "recognize, preserve and protect *the primary responsibility and rights of the States* to prevent, reduce and eliminate pollution." 33 U.S.C. § 1251(b) (emphasis supplied). It follows that "the citizen suit [under section 505] is meant to supplement rather than to supplant governmental [enforcement] action." *Gwaltney of Smithfield v. Chesapeake Bay Foundation*, 484 U.S. 49, 60, 108 S.Ct. 376, 383, 98 L.Ed.2d 306 (1987). Presumably, then, when it appears that governmental action under either the Federal or comparable State Clean Water Acts begins and is diligently prosecuted, the need for citizen's suits vanishes. *See Gwaltney*, 484 U.S. at 60–61, 108 S.Ct. at 383–384.

■ Appellant argues that if it can be found that governmental action to correct the violation which is being diligently pursued nevertheless has not specifically demanded a financial penalty, a citizen's suit may be instituted.[6] Such an interpreta-

---

**5.** Section 505 provides, in pertinent part:
  "Except as provided in ... section 1319(g)(6) of this title, any citizen may commence a civil action on his own behalf—
  (1) against any person ... who is alleged to be in violation of an effluent standard or limitation under this [Act]."
  33 U.S.C. § 1365(a).
  Under section 505(a), the district court in the district where the violation occurs has jurisdic-

tion to "enforce such an effluent standard or limitation" and "to apply any appropriate civil penalties under section 309(g) of the Clean Water Act." 33 U.S.C. § 1365(a).

**6.** Appellant relies heavily on legislative history in making this argument. While we agree that legislative history is an element to be considered in construing a statute, *see Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 205, 96 S.Ct.

of section 309(g) would enable citizen's suits to undermine the supplemental role envisioned for section 505 citizen's suits, "changing the nature of the citizen's role from interstitial to potentially intrusive." *Gwaltney*, 484 U.S. at 61, 108 S.Ct. at 384.

The state's decision not to utilize penalty provisions does not alter the comparability of the State Act's statutory scheme to the scheme found in the Federal Act. While the specific statutory section under which the State issued its Order does not, itself, contain a penalty provision, *see* M.G.L. c. 21, § 44, another section of the same statute does contain penalty provisions. *See* M.G.L. c. 21A, § 16; c. 21, § 42. These two coordinate parts are cogs in the same statutory scheme implemented by the State for the protection of its waterways.

Appellant urges that we determine comparability upon whether the precise statutory section under which the State issued its Administrative Order contains penalty provisions comparable to the Federal Act. Such a narrow reading of section 309(g)(6)(A), which turns on the logistical happenstance of statutory drafting, ignores two important considerations. First, the interdependent scheme of the State Act effectuates its goals of ensuring compliance with and enforcement of protective regulations. The focus of the statutory bar to citizen's suits is not on state statutory construction, but on whether corrective action already taken and diligently pur-

sued by the government seeks to remedy the same violations as duplicative civilian action. DEP is already acting to correct the violations upon which Appellants focus their action. Duplicative enforcement actions add little or nothing to compliance actions already underway, but do divert State resources away from remedying violations in order to focus on the duplicative effort.

Second, the goal of all actions brought under the Clean Water Acts is "to restore and maintain the chemical, physical, and biological integrity of the nation's waters." 33 U.S.C. § 1251(a). Duplicative actions aimed at exacting financial penalties in the name of environmental protection at a time when remedial measures are well underway do not further this goal. They are, in fact, impediments to environmental remedy efforts.

It is enough that the Massachusetts statutory scheme, under which the State is diligently proceeding, contains penalty assessment provisions comparable to the Federal Act, that the State is authorized to assess those penalties, and that the overall scheme of the two acts is aimed at correcting the same violations, thereby achieving the same goals.[7] What the Appellant's suit seeks to remedy is already in the process of being remedied by the State Administrative Order, an action comparable to section 309(g).[8]

---

1375, 1385, 47 L.Ed.2d 668 (1976); *United States v. United Mine Workers of America*, 330 U.S. 258, 276–280, 67 S.Ct. 677, 688–690, 91 L.Ed. 884 (1947), we are aware (as was the district court) that "reliance on legislative history in divining the intent of Congress is . . . a step to be taken cautiously," *Piper v. Chris–Craft Ind.*, 430 U.S. 1, 26, 97 S.Ct. 926, 941, 51 L.Ed.2d 124 (1977), and that statements of individual legislators, even the sponsors of legislation, should not be given controlling effect. *See Brock v. Pierce County*, 476 U.S. 253, 263, 106 S.Ct. 1834, 1840, 90 L.Ed.2d 248 (1986); *Chrysler Corp. v. Brown*, 441 U.S. 281, 311, 99 S.Ct. 1705, 1722, 60 L.Ed.2d 208 (1979).

**7.** Appellant also contends that the State Order is not comparable because the State penalty provision does not create rights of notice and comment, public participation and rights of appeal identical to the Federal Act. We disagree. Under the State Act: (1) Administrative Orders are

public documents, *see* M.G.L. c. 4, § 7; (2) upon showing adequate cause, any individual may intervene in actions brought to assess civil penalties, *see* 310 C.M.R. § 1.01(a), (f); and (3) any person with an interest in the matter has the opportunity to file a claim for an individual hearing, *see* 310 C.M.R. § 1.01(b). So long as the provisions in the State Act adequately safeguard the substantive interests of citizens in enforcement actions, the rights of notice and public participation found in the State Act are satisfactorily comparable to those found in the Federal Act.

**8.** The EPA, in its amicus brief, takes the position that in order for a state law to be comparable to section 309(g), it must have been certified by the EPA under section 402 of the Federal Clean Water Act. This argument was not raised by the parties below. Hence, we decline to consider it here. "While amici are allowed to participate in appellate proceedings to help the re-

### B. Diligent Enforcement

■ The bar against citizen's suits also requires that the State diligently enforce its Order. Appellant argues that, at best, the State action is "diligent non-prosecution." Upon examination of the record, we disagree with this assessment.

The Supreme Court in *Gwaltney* sketched the relationship between governmental and section 505 citizen enforcement actions. "The great volume of enforcement actions [are intended to] be brought by the State," citizen suits are proper only "if the Federal, State, and local agencies fail to exercise their enforcement responsibility." *Gwaltney*, 484 U.S. at 60, 108 S.Ct. at 383, (*citing* S.Rep. No. 92–414, p. 64 (1971), reprinted in *2 A Legislative History of the Water Pollution Control Act Amendments of 1972*, p. 1482 (1973)). Where an agency has specifically addressed the concerns of an analogous citizen's suit, deference to the agency's plan of attack should be particularly favored.

■ With this in mind, we fail to see how DEP has failed to exercise its responsibility under the State Clean Waters Act. The record shows the town has complied with a variety of mandatory and ongoing tasks since the Order was issued in 1987. In addition to those already mentioned, these tasks include: (1) the submission of monthly, weekly and daily test results from groundwater monitoring wells, effluent tanks and discharges to the tidal ditch; (2) the expenditure of close to one million dollars to plan the new treatment facility; and (3) enforcement of a sewer hookup moratorium. Further, the Order specifically leaves open the possibility of imposing penalties upon the town. Scituate is well into the process of diligently complying with Administrative Order Number 698.

We agree that, especially from the community's perspective, the ordered corrective measures are of vital concern. Nonetheless, Appellant's characterization of the State's Order and subsequent action is simply inaccurate. While it is true we are not in the business of planning, designing and constructing sewage treatment facilities, we are not prepared to say that the State has not enforced its Order with diligence. In light of the ongoing and undisputed actions of both Appellee and the State, we conclude that the State Order represents a substantial, considered and ongoing response to the violation, and that the DEP's enforcement action does in fact represent diligent prosecution.

### C. The Scope of Preclusion

Appellant contends that even if the section 309(g) bar applies to its suit against the town, it only extends to civil penalty actions and not to the injunctive and declaratory relief sought. Based on both the policy considerations regarding civilian actions under section 505 emphasized by both the Supreme Court and Congress and the fact that section 505 fails to differentiate civilian penalty actions from other forms of civilian relief, we conclude otherwise.

■ Section 309(g)(6)(A) bars civil penalty actions brought under section 505 where the State is diligently enforcing a comparable enforcement action. Section 505, however, does not differentiate civilian penalty actions from other civilian actions, such as those seeking injunctive relief.[9] Section 505 simply provides civilians with a general

---

viewing court attain a just result, '[w]e know of no authority which allows an amicus to interject into a case issues which the litigants, whatever their reasons might be, have chosen to ignore.'" *McCoy v. MIT*, No. 91–1318, slip op. at 23 n. 9 950 F.2d 13, 23 n. 9 (1st Cir. Nov. 19, 1991), *quoting Lane v. First Nat'l Bank*, 871 F.2d 166, 175 (1st Cir.1989).

9. Section 505 provides, in pertinent part:
"(a) Except as provided in subsection (b) of this section, any citizen may commence a *civil action* on his own behalf—

(1) against any person ... who is alleged to be in violation of [the Clean Water Act]." 33 U.S.C. § 1365(a) (emphasis supplied).
Section 309(g)(6)(A) provides, in pertinent part:
"(A) ... Any violation—

(ii) with respect to which a state has commenced and is diligently prosecuting an action under a State law comparable to this subsection,
shall not be the subject of a *civil penalty* action ... under section [505]."
33 U.S.C. § 1319(g)(6) (emphasis supplied).

grant of jurisdiction for all remedies available. Notably, civilian penalty actions are not set forth separately in section 505 as they are in the sections of the Act detailing governmental enforcement actions. *See* 33 U.S.C. § 1319. This distinction suggests to us a common base supporting the entire scope of civilian enforcement actions brought under section 505.

The Supreme Court has noted this commonality between civilian actions as well:

> In contrast, section 505 of the Act does not authorize civil penalties separately from injunctive relief: rather, the two forms of relief are referred to in the same subsection, even the same sentence. 33 U.S.C. § 1365(a). The citizen suit provision suggests a connection between injunctive relief and civil penalties that is noticeably absent from the provision authorizing agency enforcement.

*Gwaltney*, 484 U.S. at 58, 108 S.Ct. at 382.

The statutory language suggesting a link between civilian penalty and injunctive actions, considered in light of the *Gwaltney* opinion's language outlining the supplemental role the citizen's suit is intended to play in enforcement actions, leads us to believe that the section 309(g) bar extends to *all* citizen actions brought under section 505, not merely civil penalties.

Both the Congress and the Supreme Court have recognized: (1) that the primary responsibility for enforcement of Clean Water Acts rests with the government; (2) that citizen suits are intended to supplement rather than supplant this primary responsibility; and (3) that citizen suits are only proper if the government fails to exercise its enforcement responsibility. Given this high degree of deference accorded analogous and diligently enforced governmental action, it is inconceivable to us that the section 309(g) ban is only meant to extend to civil penalty actions. Surely if the limitation of civilian suits is to have any beneficial effect on enforcement of clean water legislation, the section 309(g) ban must cover all civil actions.

The State is already acting with diligence to remedy the violations Appellants seek to enjoin. Appellants argue their claim for injunctive relief should stand because the violations have been ongoing since the Order issued. Yet violations may continue despite everything reasonably possible being done by the State and Appellee to correct them. At oral arguments, Appellants conceded their suit was brought primarily to "spur action" on the part of the State and Appellee. As explained above, action is already being taken by those parties. Merely because the State may not be taking the precise action Appellant wants it to or moving with the alacrity Appellant desires does not entitle Appellant to injunctive relief. Finally, Appellant argues that the literal language of section 309(g) speaks only of civil penalties and that the ban on civilian actions only extends to penalty actions. Even if the literal reading of section 309 does lead to such a result, that result would lead to deferring to the primary enforcement responsibility of the government only where a penalty is sought in a civilian action, as if the policy considerations limiting civilian suits were only applicable within that context. Such a result would not only be undesirable, *see Gwaltney* 484 U.S. at 60–61, 108 S.Ct. at 383–384, it would be absurd. Where literal interpretation of a statute would lead to an absurd result, the Court must strive to provide an alternative meaning that avoids the irrational consequence. *See Green v. Bock Laundry Mach. Co.*, 490 U.S. 504, 527, 109 S.Ct. 1981, 1994, 104 L.Ed.2d 557 (1989) (Scalia, J., concurring). Accordingly, for the reasons given above, we hold that the section 309(g) ban extends to Appellant's claim for injunctive relief as well as civil penalties.

## III. JUDGMENT

The district court's ruling granting Appellee's motion for summary judgment and denying Appellant's motion for summary judgment is

*Affirmed.*

SELYA, Circuit Judge (concurring).

I join in Judge Hill's persuasive opinion, but I have nonetheless elected to write separately for two reasons. First, I think

it advisable to underscore the closeness of the questions raised in this appeal. Second, I want to make clear my view that the dispositive feature in the case is that the Massachusetts Clean Waters Act (MCWA), *as a whole,* is a "State law comparable to" subsection 309(g) of the Federal Act. *See* 33 U.S.C. § 1309(g)(6)(A). That is to say, inasmuch as the MCWA contains an adequate mechanism for assessing administrative penalties against polluters, *see* M.G.L. ch. 21, § 42; *see also* M.G.L. ch. 21A, § 16, it is "comparable" to subsection 309(g) in the statutorily significant sense. Thus, as the district court found and as this court now rules, because the Massachusetts DEP took action against the Town of Scituate under the MCWA, and continues diligently to prosecute that action, a later-filed citizens' suit is necessarily barred.

The appellant's attempt to balkanize the MCWA by focusing the requisite comparison more narrowly would, if successful, produce a weird asymmetry, destroying uniformity in the application of federal law by subjecting the workings of an important federal statute to the vagaries of draftsmanship in the legislatures of the several states. Moreover, the approach would require that cases like this one turn on essentially clerical considerations—here, whether or not the state's formal recital of the source of its power, in the issuance of its administrative order, included, or omitted, a specific reference to M.G.L. ch. 21, § 42. Since the substance of the DEP's administrative order could—and, unquestionably, would—have remained precisely the same notwithstanding the inclusion of such a ritualistic incantation, it would seem overly formalistic, if not mindless, to accord decretory significance to the presence or absence of an explicit reference. I simply do not believe it to be likely that Congress intended so odd a result.