**COALITION FOR A LIVEABLE WEST SIDE, INC., Five Borough Alliance, Inc., Soundwatch, Inc., New York City Environment Campaign, Inc., Bronx Council for Environmental Quality, Inc., Citizens United Against Riverwalk, Inc. and Union Square Community Coalition, Inc., Plaintiffs,**

v.

**NEW YORK CITY DEPARTMENT OF ENVIRONMENTAL PROTECTION, Defendant.**

No. 92 Civ. 9011 (PNL).

United States District Court, S.D. New York.

Aug. 2, 1993.

Order Clarifying Record Sept. 15, 1993.

Stults Balber Horton & Slotnik, P.C., New York City, John T. Van Der Tuin, of counsel, for plaintiffs.

O. Peter Sherwood, Corp. Counsel of the City of New York, New York City, Steven Russo, Susan M. Kath, Mary Modig, of counsel, for defendant.

## OPINION AND ORDER

LEVAL, District Judge.

This is a citizen suit brought under the Clean Water Act (CWA), alleging violations by the New York City Department of Environmental Protection (DEP/City) of the terms of its CWA permits for the North River Wastewater Treatment Plant and the Wards Island Wastewater Treatment Plant by exceeding the permits' respective limits on the average daily dry weather flow sent to these plants.

DEP/City moves for summary judgment, contending that (1) under the CWA, prior enforcement actions brought by the New York State Department of Environmental Conservation (DEC/State) for these same permit exceedences at the two plants bar the commencement of a CWA citizen suit; and (2) even if the suit is not barred, the action should be dismissed as moot because the remedial measures imposed on DEP/City by DEC/State will cause the violations at issue to cease without likelihood of recurrence. Plaintiffs cross-move for summary judgment on the issue of liability on the grounds that there is no factual dispute that the two plants are and will for some time continue to be in violation of permit limitations.

### Background

The CWA establishes the national pollutant discharge elimination system (NPDES). While NPDES permits are issued by the Environmental Protection Agency, § 402(b) of the CWA, 33 U.S.C. § 1342(b), provides for delegation of permit granting authority to a State pursuant to an EPA-approved permitting program (a state pollutant discharge elimination system or SPDES). DEC/State has issued SPDES permits for New York City's fourteen sewage treatment plants, including the two at issue here. These permits govern the type and amount of pollutants that may be discharged and the maximum limit on the flow that may be sent to any plant.

The Wards Island plant, under the Triborough Bridge, has a permit from DEC/State providing that the dry weather effluent flow (i.e. discounted for stormwater runoff) to the plant must not exceed 250 million gallons per day (mgd). The permit provided that within four months the average flow must be reduced to 115% of the plant's design capacity and that, if it was not, DEC/State could ban new sewer connections. It soon became clear to DEC/State that the Wards Island plant would not meet the reduction goals. As a result, DEC/State and DEP/City entered into a consent order in 1989, under which DEP/City would implement a comprehensive program, including various conservation measures and technological improvements, to reduce flows at the plant. The flow exceedences at Wards Island addressed by this order are the basis for the complaint with respect to that plant. Various other negotiations between DEC/State and DEP/City followed. In January 1993, DEC/State initiated enforcement proceedings against DEP/City based on the latter's failure to comply with aspects of the 1989 consent order; this resulted in negotiation of a modi-

fied consent order, providing for further measures to be undertaken by DEP/City and imposition of a $200,000 penalty on DEP/City for missing the deadline in the 1989 order for submission of the preliminary design for plant expansion.

The North River Plant's SPDES permit provides that its maximum dry weather flow must not exceed 170 mgd. In a letter dated December 16, 1991, DEC/State issued a notice of hearing and complaint concerning exceedences of this limit, which exceedences are those at issue in the complaint here. After negotiations, DEC/State and DEP/City entered into a consent order on July 1, 1992. Again, this order requires various conservation and other flow reduction measures by DEP/City, along with certain monitoring and planning efforts.

In December 1992, plaintiffs brought this citizen suit, pursuant to § 505 of the CWA, 33 U.S.C. § 1365. The complaint seeks injunctive relief, enjoining DEP/City from permitting any additional sewer connections or additional sewer flow into either plant unless the plants have unused capacity under the permits and appointing a neutral expert to monitor DEP/City's operation of the two plants and to provide periodic reports to the parties and the court until the average daily flow of the plants is consistently below 95% of the maximum flow limitations, along with attorneys fees and costs.

## Discussion

### A. Whether plaintiffs' complaint is barred

■ This citizen suit is brought under Section 505 of the CWA, 33 U.S.C. § 1365, which gives this court jurisdiction over the complaint, "Except as provided in ... section 1319(g)(6) of this title...." The referenced provision, § 1319(g)(6), bars certain citizen suits under certain circumstances. It provides, in pertinent part, that

any violation— ... (ii) with respect to which a State has commenced and is diligently prosecuting an action under a State law comparable to this subsection, or (iii) for which the ... State has issued a final order not subject to further judicial review and the violator has paid a penalty assessed under this subsection, or such comparable State law, as the case may be, *shall not be the subject of a civil penalty action* under subsection (d) of this section or section 1321(b) of this title or section 1365 [the citizen suit provision] of this title.

§ 1319(g)(6)(A)(ii) (emphasis added).

DEP/City contends that § 1319(g)(6) bars this complaint because the State has commenced and is diligently prosecuting an action under a comparable state law with respect to both plants. Without reaching the issues of whether the State law at issue is "comparable" and whether the State is "diligently prosecuting" actions against the two plants, I conclude that this action is not barred by § 1319(g)(6) because the clear language of that provision precludes only citizen suits *seeking civil penalties*. When a State enforcement proceeding has already been brought, § 1319(g)(6) bars, *inter alia*, "a civil penalty action" under the citizen suit provision. Section 1365 is explicit that a citizen suit may seek injunctive relief as well as civil penalties. This complaint seeks only injunctive relief. The bar of § 1319(g)(6) applies only to suits for civil penalties. Accordingly this suit is not barred by § 1319(g)(6). *See New York Coastal Fishermen's Ass'n v. New York City Department of Sanitation*, 772 F.Supp. 162, 169 (S.D.N.Y.1991) ("we note that the limitation on citizen suits ... relates only to actions for civil penalties, not injunctive or declaratory relief").[1]

DEP/City looks for support to *North & South Rivers Watershed Ass'n v. Town of Scituate*, 949 F.2d 552 (1st Cir.1991). In *North & South* the First Circuit held that it

---

1. The sparse but relevant legislative history generally supports this conclusion. The Conference Committee Report states that,

    No one may bring an action to recover civil penalties under section ... 505 of this Act for any violation with respect to which the Administrator has commenced and is diligently pros-

    ecuting an administrative civil penalty action.... [T]his limitation would not apply to (1) an action seeking relief other than civil penalties (*e.g.*, an injunction or declaratory judgment); ....

    H.R.Conf.Rep. No. 1004, 99th Cong., 2d Sess. at 133 (1986).

would be irrational to construe the § 1319(g)(6) bar to apply only to civil penalty actions and therefore construed the statute, in spite of its express words, to bar all citizen actions in the prescribed circumstances. 949 F.2d at 558.

I find no basis for the First Circuit's re-drafting of the statute. The language of § 1319(g)(6) is clear and unambiguous. Its bar applies only to *civil penalty* actions. Nor do I find any basis for the assertion that such a rule is irrational. As written, § 1319(g)(6) ensures that an entity that has violated the CWA will not be subject to duplicative civil penalties for the same violations. On the other hand, the statute permits a federal district court to entertain an action for injunctive relief for situations where, for example, a permit holder may have paid the relevant civil penalties but continues to violate its permit limitations or where the injunctive relief obtained in the state proceedings turns out to be inadequate to address the violations at issue. DEP/City contends it was the intention of the bar provision of § 1319(g)(6) to ensure that where a State was diligently pursuing reme-dies against the city, the city would not be whipsawed by a parallel citizen action and that the State proceeding would dominate. Such reasoning is perfectly compatible with the words of the statute. A court which entertains a citizen action for injunctive relief can manage the action so as to ensure that the diligently pursued State enforcement ac-tion will dominate and that the city will not be whipsawed by multiple actions. It may even be appropriate to stay the citizen action while the city can demonstrate that the State is indeed diligently prosecuting its action and seeking adequate relief. Of course, the fed-eral court must manage the citizen suit seek-ing injunctive relief with deference to the injunctive relief already applied by the state prosecution. *Cf. Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Foundation, Inc.,* 484 U.S. 49, 60, 108 S.Ct. 376, 383, 98 L.Ed.2d 306 (1987) ("the citizen suit is meant to supplement rather than to supplant gov-ernmental action"). This deference will en-sure that a defendant is not subject to differ-ent and inconsistent injunctive relief, but it does not require that plaintiffs' complaint be dismissed. I respectfully disagree with the First Circuit's conclusion that the statute, as drafted, would produce irrational results.

The express words of § 1319(g)(6)'s bar provision appear to have been chosen with care. I can find no reason to abrogate them. Accordingly, I conclude that § 1319(g)(6) does not deprive this court of jurisdiction, and DEP/City's motion is denied.

## B. *Whether plaintiffs' claims are moot*

■ DEP/City next contends that it is en-titled to summary judgment on the grounds that the remedial measures imposed on DEP/City in the DEC/State orders will en-sure permit compliance and that plaintiffs' claims are therefore moot. At Wards Island, the DEC/State order requires DEP/City to expand treatment capacity from 250 mgd to 275 mgd; along with water conservation measures required by the order, this should reduce flow by approximately 20 mgd by the end 1996. These measures, if carried out, would cure the Wards Island flow exceedenc-es by the end of 1996. At North River, the DEC/State order requires measures that are projected to reduce flows to the plant by 11 mgd by the end of 1996. According to DEP/City, all these measures are implemented, are being implemented, or will be implement-ed in the near future (a few over the next few years). The DEC/State order provides for fines of $25,000 per day if these measures are not implemented. These measures, if imple-mented, should cure all the North River per-mit violations alleged by plaintiffs here.

Notwithstanding these present and future remedial measures, plaintiffs' claims are not moot. DEP/City does not deny—indeed, it admits—that the permit violations at the two plants continue and are likely to continue for at least several years. In *Atlantic States Legal Foundation, Inc. v. Eastman Kodak,* 933 F.2d 124, 127 (2d Cir.1991), the Second Circuit faced the issue of whether a properly commenced citizen suit under the CWA may continue after the defendant and the relevant state officials have reached a settlement re-garding the CWA violations at issue in the citizen suit. The court held that, .

If the state enforcement proceeding has caused the violations alleged in the citizen suit to cease without any likelihood of recurrence—has eliminated the basis for the citizen suit—we believe that the citizen action must be dismissed. . . . [W]e conclude that Atlantic States may not challenge the terms of the settlement between Kodak and New York State unless there is a realistic prospect that the violations alleged in Atlantic States's complaint will continue notwithstanding the settlement. . . . A citizen suing pursuant to Section 505 of the Act thus may not revisit the terms of a settlement reached by competent state authorities without regard to the probability of a continuation of the violations alleged in the complaint. Nor may the citizen suit proceed merely for the purpose of further investigating and monitoring the state compromise absent some realistic prospect of the alleged violations continuing.

933 F.2d at 127–28; *see also Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Foundation, Inc.,* 484 U.S. 49, 60–61, 108 S.Ct. 376, 383, 98 L.Ed.2d 306 (1987); *Atlantic States Legal Foundation, Inc. v. Pan American Tanning Corp.,* 993 F.2d 1017 (2d Cir.1993). Under this standard, plaintiffs claims are not moot. To prove mootness DEP/City would have to show that the violations are entirely in the past and cannot reasonably be expected to recur; it has shown the opposite. All DEP/City can maintain is that *if* all the required remedial measures are instituted on schedule and have the effect expected, then the permit violations of which the plaintiffs complain will cease in several years. Obviously, then, the permit violations have not ceased without likelihood of recurrence. DEP/City has failed to show mootness under the standard set by the Second Circuit.

C. *Plaintiffs' motion for summary judgment on liability*

█ Plaintiffs cross-move for summary judgment on the issue of liability. They contend that because there is no factual dispute as to whether or not the DEP/City has violated the terms of its discharge permits at both plants, plaintiffs are entitled to summary judgment on this issue. DEP/City does not oppose plaintiffs' motion to the extent plaintiffs seek a partial judgment "declaring that the flow exceedences at the North River and Wards Island Plants are violations of the CWA." Defendant Reply Memorandum at 29. Courts have held that the CWA imposes strict liability and that summary judgment on liability under the CWA is therefore appropriate where the undisputed facts show that permit levels are exceeded. *See, e.g., United States v. CPS Chemical Co.,* 779 F.Supp. 437, 442 (E.D.Ark. 1991); *Natural Resources Defense Council v. Loewengart & Co.,* 776 F.Supp. 996, 998 (M.D.Pa.1991). As it is not in dispute that DEP/City is exceeding its permit limits, plaintiffs are entitled to summary judgment on liability.

This ruling does not address the appropriateness of any particular remedy or of any particular proceedings in order to determine the appropriate remedy. All that is determined is the uncontested fact that DEP/City is in violation of its permits.

### Conclusion

DEP/City's motion for summary judgment is denied. Plaintiffs' motion for summary judgment on the issue of liability is granted.

SO ORDERED.

### *ORDER*

LEVAL, District Judge.

My Opinion and Order dated July 30, 1993 included the sentence, "DEP/City does not deny—indeed it admits—that the permit violations at the two plants continue and are likely to continue for at least several years." Opinion at 197.

The City asserts that the sentence does not accurately portray its position. It asserts that:

While the City admits that the exceedences of the maximum dry weather flow limits at the Wards Island Plant are likely to continue until the remediation measures required by the consent order are implemented, the City has never admitted that the exceedences of the maximum monthly dry weather flow limits at the North River

Plant are likely to continue into the future. In fact, the position taken by the City on this motion was that the water conservation measures implemented to date had significantly reduced flow to the plant and had greatly reduced the risk of continuing future violations at the plant. The City also noted that the additional measures required under the consent order which have yet to be implemented, as well as the toilet retrofit rebate program, would produce an even greater reduction in flows to the Plant and further reduce the risk of future violations as well as accommodate projected growth in the North River drainage basin.

Letter of Steven Russo, August 18, 1993.

The record accordingly shall reflect the City's current position.

SO ORDERED.