**ARKANSAS WILDLIFE FEDERATION, Plaintiff,**

v.

**ICI AMERICAS INC., Defendant.**

**No. LR–C–91–681.**

United States District Court, E.D. Arkansas, W.D.

April 8, 1993.

Samuel E. Ledbetter, Nichols, Wolff & Ledbetter, Little Rock, AR, James M. Hecker, Trial Lawyers for Public Justice, Washington, DC, for plaintiff.

Charles R. Nestrud, Chisenhall, Nestrud & Julian, P.A., James Felix Goodhart, Banks, Dodson & Goodhart, Little Rock, AR, for defendant.

James E. Baine, Murphy Oil USA, Inc., El Dorado, AR, Scott M. DuBoff, Winston & Strawn, Washington, DC, for movants.

## ORDER

STEPHEN M. REASONER, Chief Judge.

Presently before the Court is Defendant's Motion for Summary Judgment (Document # 26). For the reasons stated herein, the motion is granted and plaintiff's complaint is dismissed.

## I. FACTS

On September 30, 1988 the Arkansas Department of Pollution Control & Ecology (ADPC & E) issued Federal National Pollutant Discharge Elimination System (NPDES) Permit No. AR0042901 to defendant, ICI Americas, Inc. (ICI). ICI is engaged in the production of liquid and granular thiocarbamate and organophosphate herbicides. ICI's North Little Rock facility discharges wastewater into the Arkansas River.

During December, 1988 through February, 1991, ADPC & E sent notices to ICI informing it that it had committed violations of various limits contained in its NPDES permit. ADPC & E requested a meeting with ICI by letter dated February 15, 1991, which informed ICI that it was subject to enforcement action under the Arkansas Water and Air Pollution Control Act (AWAPCA). During that meeting, Irvin Wheeler, ICI North Little Rock Plant Manager, and R. Hayes Baber, ICI Quality Control Supervisor, presented Mark Bradley, Enforcement Engineer in the NPDES Enforcement Section, and Joseph Williford, ADPC & E Enforcement Supervisor, NPDES Enforcement Division, with a copy of an ICI NPDES Compliance Project Action Plan dated February 28, 1991. A settlement was reached whereby the parties agreed to execute a Consent Administrative Order (CAO) which required ICI to pay a $1,000 civil penalty and implement the measures in the ICI NPDES Compliance Project Action Plan. The CAO was effective April 16, 1991.

A Corrected CAO was reissued on September 9, 1991. The Corrected CAO reflects that ICI had agreed to pay the $1,000 civil penalty in full settlement of all permit violations occurring up to the date of the Order. It also left open the possibility of future remedies or sanctions by ADPC & E.

On July 2, 1991, plaintiff, Arkansas Wildlife Federation, notified ICI that it intended to file the present lawsuit. Plaintiff filed the Complaint on October 15, 1991, less than 120 days after their notice was given.

On December 26, 1991, ICI filed a Request for Extension of Schedule of Compliance with ADPC & E. The request asked for a contin-

uance of the compliance date to April 30, 1992 so that, according to ICI, it could be allowed to further investigate sources of zinc contamination and make any necessary changes. On December 27, 1991, ADPC & E granted the request as reasonable and required ICI to pay another $500.00 administrative penalty for noncompliances occurring after the date of the Corrected CAO.

On March 13, 1992, ICI requested authorization to lay additional piping to combine certain outfalls into one outfall. ICI represented that by doing so, it could demonstrate compliance with all permit limits. On April 2, 1992, ADPC & E approved ICI's request and issued Construction Permit No. 42901C1. On April 30, 1992, ADPC & E amended the CAO to allow ICI until December 15, 1992 to come into compliance with the terms and conditions of its NPDES Permit. The amendment levied an additional $500.00 in penalties but provided that ICI would not be assessed any additional penalties for the presence of zinc as long as it complied with the terms of the CAO.

On January 7, 1993, ADPC & E and ICI entered into Amendment #3 (Nunc Pro Tunc) to Corrected Consent Administrative Order. This third amendment states:

> Effective on December 15, 1992, and continuing until Oct. 31, 1993, all reporting for Outfalls 001, 002, and 003 shall be terminated and the Permittee will not be required to conduct sampling at these points. Effective on Dec. 15, 1992 and continuing until Oct. 31, 1993, the Permittee shall monitor and report discharge from Outfall 004 as established under Construction Permit No. 42901C1. The discharge limitations for Outfall 004 shall be the same as those specified for Outfall 001 under the existing permit number AR0042901 (Page 1A of Part 1), with the exception of Zinc, Total Recoverable. The requirement for Zinc, Total Recoverable, shall be "report only" for Outfall 004 with this limitation also expiring on Oct. 31, 1993.

The amendment further states that there were no violations of Amendment No. 2 to the CAO. Nevertheless, the amendment required ICI to pay a civil penalty of $500.00

"in compromise and full settlement of any claims for civil penalties."

Defendant has now moved for summary judgment. According to its brief, defendant claims that:

> the limitations to citizen suits in section 309(g)(6)(A)(ii) and (iii) of the Clean Water Act, 33 U.S.C. § 1319(g)(6)(A)(ii) and (iii), bar Plaintiff from bringing this action because the Arkansas Department of Pollution Control & Ecology ... has prosecuted an administrative enforcement action against ICI for the same NPDES permit violations pursuant to Arkansas law, which is comparable to the administrative enforcement provisions in the Clean Water Act, and (1) the enforcement action has resulted in the issuance of final orders that are no longer subject to judicial review and the payment of civil penalties by ICI; *or alternatively*, (2) the enforcement action has been and continues to be diligently prosecuted by the ADPC & E.

DEFENDANT'S BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT at 2.

## II. 33 U.S.C. § 1319(g)(6)(A)(ii) and (iii)

33 U.S.C. § 1319(g)(6)(A) provides in pertinent part that:

> Action taken by the Administrator or the Secretary, as the case may be, under this subsection shall not affect or limit the Administrator's or Secretary's authority to enforce any provision of this chapter; except that any violation—
>
> (i) with respect to which the Administrator or the Secretary has commenced and is diligently prosecuting an action under this subsection,
>
> (ii) with respect to which a State has commenced and is diligently prosecuting an action under a State law comparable to this subsection, or
>
> (iii) for which the Administrator, the Secretary, of the State has issued a final order not subject to further judicial review and the violator has paid a penalty assessed under this subsection, or such comparable State law, as the case may be,

shall not be the subject of a civil penalty action under subsection (d) of this section or section 1321(b) of this title or section 1365 of this title.

The Court will address defendant's § 1319(g)(6)(A)(ii) argument first.

## A. Section 1319(g)(6)(A)(ii)

### 1. "Commenced" and "Violation"

■ Defendant states that ADPC & E has "commenced" an action addressing every violation raised by plaintiff. This Court has previously found in the Order of April 23, 1992, that ADPC & E commenced an action by issuing the CAO on April 16, 1991, and sees no reason to disturb that finding. Thus, the remaining issue is whether the CAO and the amendments thereto were intended to cover all violations alleged by plaintiff.

Defendant argues that the language of the Corrected CAO demonstrates that the original CAO was intended to cover all violations occurring to that point. The Corrected CAO states:

In compromise and full settlement of all violations occurring up to and including the date this Order is executed by the Director of the ADPC & E, including those specified in the Findings of Fact, the Permittee agrees to pay to ADPC & E the total sum of One Thousand Dollars ($1,000) as a voluntary civil penalty.

DEFENDANT'S EXHIBIT 8 at 5–6. Apparently, the problem arises from the language of the original CAO which states:

In compromise and full settlement of the civil penalties for violations (specified in the Findings of Fact), the Permittee agrees to pay to ADPC & E the total sum of One Thousand Dollars ($1000) as a voluntary civil penalty.

DEFENDANT'S EXHIBIT # 7 at 4. Plaintiff does not dispute that the Corrected CAO covers all violations up to the date of the order, but points out that Mark Bradley, an Enforcement Engineer in ADPC & E's NPDES Enforcement Section, stated in deposition that ADPC & E had never before corrected a CAO to expand the scope of covered violations. DEFENDANT'S EXHIBIT # 5 at 25–26. However, defendant points out

that Mr. Bradley also stated it was the department's intent to issue a civil penalty that addressed all past violations dating back to the beginning of the permit. *Id.* at 13, 35–36. The Court agrees with defendant and finds that the civil penalty assessed in the original CAO was intended to cover all past violations.

Furthermore, the three amendments to the CAO have all assessed civil penalties that purport to cover all violations occurring up to their respective dates of entry. Therefore, in this Court's opinion the action commenced and penalties assessed by ADPC & E do cover all violations of which plaintiff could possibly complain.

### 2. "Comparability"

Defendant next argues that the provisions in the Arkansas Water and Air Pollution Control Act for assessing administrative penalties are "comparable" to those in 33 U.S.C. § 1319(g).

#### a. Penalty Provisions

■ Defendant states that the ADPC & E has been empowered to seek criminal, civil, and administrative penalties against persons who violate any rules, regulations, orders, permits, or plans issued pursuant to the AWAPCA. ARK. CODE ANN. § 8–4–103. Also, the penalty provisions are, according to defendant, generally patterned after those in 33 U.S.C. § 1319. Sections 8–4–103(c) and (d) provide that a penalty of $10,000 per day per violation may be assessed, or in the alternative, the civil penalty may be equal to the amount of any pecuniary gain the violator derived from commission of the offenses. 33 U.S.C. § 1319(g)(2)(A) and (B) also provide for penalties of $10,000 per violation or per day during which the violation continues.

Plaintiff counters that when the agreement between ADPC & E and defendant was finalized on April 8, 1991, the maximum penalty was only $5,000 per violation. Thus, defendant's maximum penalty for all violations occurring between November of 1988 and June of 1992 was only $760,000 in contrast to a maximum of $1,280,000 under federal law. However, as defendant points out, the $10,-000 maximum penalty became effective on

April 9, 1991, and the effective date of the CAO was April 16, 1991.

Defendant also points out that the factors the commission must consider in determining the amount of an administrative civil penalty are similar to those in 33 U.S.C. § 1319(g)(3).[1] The respective factors are indeed similar.

In sum, the penalty and related provisions under Arkansas law are comparable to those under federal law. The factors in determining the amount of a civil penalty are similar, and whether the maximum penalty at relevant times was $5,000 or $10,000 would not alter this Court's determination that the Arkansas penalty provisions are comparable to the corresponding federal provisions.

### b. Notice and Comment

 The provisions of the federal statute that provide for public participation are found in 33 U.S.C. § 1319(g)(4). That section reads:

(A) Public notice

Before issuing an order assessing a civil penalty under this subsection the Administrator or Secretary, as the case may be, shall provide public notice of and reasonable opportunity to comment on the proposed issuance of such order.

(B) Presentation of evidence

Any person who comments on a proposed assessment of a penalty under this subsection shall be given notice of any hearing held under this subsection and of the order assessing such penalty. In any hearing held under this subsection, such person shall have a reasonable opportunity to be heard and to present evidence.

(C) Rights of interested persons to a hearing

If no hearing is held under paragraph (2) before issuance of an order assessing a penalty under this subsection, any person who commented on the proposed assessment may petition, within 30 days after the issuance of such order, the Administrator or Secretary, as the case may be, to set aside such order and to provide a hearing on the penalty. If the evidence presented by the petitioner in support of the petition is material and was not considered in the issuance of the order, the Administrator or Secretary shall immediately set aside such order and provide a hearing in accordance with paragraph (2)(A) in the case of a class I civil penalty and paragraph (2)(B) in the case of a class II civil penalty. If the Administrator or Secretary denies a hearing under this subparagraph, the Administrator or Secretary shall provide to the petitioner, and publish in the Federal Register, notice of an the reasons for such denial.

Defendant points out that the provisions pertaining to hearings before ADPC & E are

---

1. ADPC & E Reg. No. 7, § 9, states that PC & E is required to consider the following factors:

 (a) The seriousness of the noncompliance and its effect upon the environment, including degree of risk or harm to public health, caused by the violation.

 (b) Whether the cause of the noncompliance was an unavoidable accident.

 (c) The violator's cooperativeness and efforts to correct the violation.

 (d) The history of a violator in taking all reasonable steps or procedures necessary or appropriate to correct any noncompliance.

 (e) The violator's history of previous documented violations within the last six months regardless of whether or not any administrative, civil, or criminal proceeding was commenced therefore.

 (f) Whether the cause of a violation was an intentional act or omission on the part of the violator.

 (g) Whether the noncompliance has resulted in an economic benefit to the violator.

 (h) Whether the investigation enforcement action has resulted in unusual or extraordinary costs to the Department or the public.

 (i) Whether any part of the noncompliance is attributable to the action or inaction of the state government itself.

33 U.S.C. § 1319(g)(3) states:

 In determining the amount of any penalty assessed under this subsection, the Administrator or the Secretary, as the case may be, shall take into account that nature, circumstances, extent and gravity of the violation, or violations, and, with respect to the violator, ability to pay, any prior history of such violations, the degree of culpability, economic benefit or savings (if any) resulting from the violation, and such other matters as justice may require. For purposes of this subsection, a single operational upset which leads to simultaneous violations of more than one pollutant parameter shall be treated as a single violation.

set forth in §§ 8–4–205, 8–4–210, 8–4–212, and 8–4–218 to 8–4–221, along with ADPC & E Reg. No. 8, Part V. Specifically, defendant states that ADPC & E regulations provide that:

Any person who has submitted comments on an enforcement matter can request an adjudicatory hearing and can be made a party to the proceeding conducted by the Department. ADPC & E Reg. No. 8, Part VII, § 1. Additionally, "any person" may intervene "at any stage of a proceeding" if such person timely files a petition to intervene and, either had a statutory right to initiate the proceeding, or has an interest which may be adversely affected by the outcome of the proceeding. *Id.*, Part VII, § 5. *By providing this right to intervene, Arkansas law complies with the applicable federal requirement for public participation in enforcement proceedings. See* 44 C.F.R. § 123.27(d)(1).

DEFENDANT'S BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT at 21.

Indeed, 44 C.F.R. § 123.27(d) provides:

Any state administering a program *shall provide for public participation* in the State enforcement process *by providing* either:

(1) *Authority which allows intervention as of right in any civil or administrative action ... by any citizen having an interest which is or may be adversely affected;* or

(2) Assurance that the State agency or enforcement authority will:

(i) Investigate and provide written responses to all citizen complaints ...;

(ii) Not oppose intervention by any citizen when permissive intervention may be authorized by statute, rule, or regulation; and

(iii) publish notice of and provide at least 30 days for public comment on any proposed settlement of a State enforcement action. (emphasis added).

It is clear that ADPC & E Reg. No. 8, Part VII, § 5 complies with § 123.27(d)(1) in that it allows for intervention as of right if the petitioner files a timely petition to intervene and either (1) had a statutory right to initiate the proceeding or (2) has an interest which is or may be adversely affected by the outcome of the proceeding. Also, the court in *Natural Resources Defense Council, Inc. v. EPA,* 859 F.2d 156 (D.C.Cir.1988), confirmed that § 123.27(d) provides "meaningful and adequate opportunity for public participation consistent with the statutory mandate."

Further, in *North and South Rivers Watershed Ass'n v. Scituate,* 949 F.2d 552 (1st Cir.1991), the court granted summary judgment under facts almost identical to those at bar. According to that court, the plaintiff contended that the state law was not comparable to federal law because it did not create rights of notice and comment, public participation and rights of appeal identical to the Federal Act. The court disagreed and stated:

Under the State Act: (1) Administrative Orders are public documents, *see* M.G.L. c. 4, § 7; (2) upon showing adequate cause, any individual may intervene in actions brought to assess civil penalties, *see* 310 C.M.R. § 1.01(a), (f); and (3) any person with an interest in the matter has the opportunity to file a claim for an individual hearing, *see* 310 C.M.R. § 1.01(b). *So long as the provisions in the State Act adequately safeguard the substantive interests of citizens in enforcement actions, the rights of notice and public participation found in the State Act are satisfactorily comparable to those found in the Federal Act.*

*Id.* at 556 n. 7 (emphasis added). Arkansas law provides the same procedural safeguards as the statute before the Court in *Scituate.*

Plaintiff cites several cases in support of their argument that Arkansas does not provide an opportunity for public participation comparable to federal law.[2] Although these cases tend to take a more restrictive view of

---

2. *Public Interest Research Group of New Jersey, Inc. v. GAF Corp.,* 770 F.Supp. 943 (D.N.J.1991); *Atlantic States Legal Foundation v. Universal Tool & Stamping Co., Inc.,* 735 F.Supp. 1404 (N.D.Ind.1990); and *Pennsylvania Environmental Defense Fund v. Mount Pocono Municipal Authority,* Civil No. 90–1208 (M.D.Pa. May 14, 1991).

"comparability," the Court is satisfied that the right to public participation under Arkansas law is sufficiently comparable to § 1319(g), especially in view of 40 C.F.R. § 123.27(d).

### c. Judicial Review

Finally, defendant asserts that the provisions for judicial review are comparable to those found in 33 U.S.C. § 1319(g)(8).[3] According to defendant, an administrative order issued by the Director of ADPC & E is subject to review by the Commission upon the filing of a request by a party within 30 days of the order. ADPC & E Reg. No. 8, Part V, § 7 *et seq.*, and Part VIII. Also, judicial review of any final order can be brought in the state circuit courts by any person who may be adversely affected thereby. ARK.CODE ANN. § 8–4–222. Plaintiff did not argue that the judicial review portions of the Arkansas scheme are not comparable to the federal scheme.

### d. Conclusion as to Comparability

This Court is satisfied that Arkansas law is comparable to federal law as required by 33 U.S.C. § 1319(g) and is in agreement with the interpretation of comparability given by the First Circuit in *Scituate.* If this Court were to follow plaintiff's reasoning, § 1319(g) "would enable citizen's suits to undermine the supplemental role envisioned for section 505 citizen's suits, 'changing the nature of the citizen's role from interstitial to potentially intrusive.'" *Scituate,* 949 F.2d at 556 (quoting *Gwaltney of Smithfield v. Chesapeake Bay Foundation,* 484 U.S. 49, 61, 108 S.Ct. 376, 383, 98 L.Ed.2d 306 (1987)).

The EPA has noted its disagreement with the decision in *Scituate* in a guidance memorandum dated March 5, 1993. However the Court notes that EPA's position would be similar to that of plaintiff's in that § 1319(g) would prevent the EPA as well as a citizen from bringing a contemporaneous enforcement action. Furthermore, the Court agrees with the reasoning in *Scituate* that "[i]t is

enough ... that the overall scheme of the two acts[4] is aimed at correcting the same violations, thereby achieving the same goals." *Id.*

### 3. Diligent Prosecution

■ The Supreme Court in *Gwaltney of Smithfield v. Chesapeake Bay Foundation,* 484 U.S. 49, 61, 108 S.Ct. 376, 383, 98 L.Ed.2d 306 (1987) took a narrow view of the role of citizen's suits.

> The bar on citizen suits when governmental enforcement action is under way suggests that the citizen suit is meant to supplement rather than to supplant governmental action. The legislative history of the Act reinforces this view of the role of the citizen suit. The Senate Report noted that "[t]he Committee intends the great volume of enforcement actions [to] be brought by the State," and that citizen suits are proper only "if the Federal, State, and local agencies *fail to exercise* their enforcement responsibility."

*Id.,* 484 U.S. at 60, 108 S.Ct. at 383 (quoting S.Rep. No. 92–414, p. 64 (1971), reprinted in 2 A Legislative History of the Water Pollution Control Act Amendments of 1972 p. 1482 (1973)). Also, in *Connecticut Fund for the Environment v. Contract Plating Co., Inc.,* 631 F.Supp. 1291 (D.Conn.1986) the court stated that there is a presumption of diligence "absent persuasive evidence that the state is currently engaged in a pattern of conduct that could be considered dilatory, collusive or otherwise in bad faith." *Id.* at 1293. And in *Scituate,* the court was of the opinion that where a state agency had addressed the concerns of an analogous citizen's suit, "deference to the agency's plan of attack should be particularly favored." *Scituate,* 949 F.2d at 557. This Court is in agreement with the general theme of these cases that the state agency must be given great deference to proceed in a manner it considers in the best interests of all parties involved.

---

**3.** 33 U.S.C. § 1319(g)(8) provides in pertinent part:

 Any person against whom a civil penalty is assessed under this subsection or who commented on the proposed assessment of such penalty in accordance with paragraph (4) may

obtain review of such assessment ... by filing a notice of appeal in such court within the 30–day period beginning on the date the civil penalty order is issued....

**4.** state and federal.

Defendant states that the April 16, 1991 CAO and the Corrected CAO require ICI to:

"take whatever corrective action is necessary to eliminate and prevent recurrence of the effluent violations cited in the [Order]" and establish a specific schedule of compliance requiring ICI to report to ADPC & E the specific corrective actions that are being taken to prevent recurrence of the non-compliant discharges.

DEFENDANT'S BRIEF IN SUPPORT at 32–33 (quoting, Corrected CAO at pp. 4–5, ¶¶ 1–3). Also, while the CAO has been amended on several occasions and the compliance schedule has been extended, defendant argues that this demonstrates that ADPC & E is providing ongoing supervision and enforcement of the CAO. Further, defendant asserts that ADPC & E has required ICI to pay additional administrative penalties for noncompliances occurring after the original CAO.

On the other hand, plaintiff argues that the relatively small penalty amounts assessed in the case at bar were arbitrarily set without consideration of either the economic benefit that defendant gained from the violations or the seriousness of the violations. However, as defendant points out, although the amount of the penalties are substantially less than the maximum allowed by statute, they are consistent with the penalties ADPC & E has required other permit holders to pay. *See,* DEFENDANT'S EXHIBIT # 24. Also as defendant points out, it had developed a plan which required a significant capital outlay to correct noncompliances prior to their initial meeting with ADPC & E. The deposition of Mark Bradley confirms that ADPC & E considered this an important factor when determining the penalty. *See,* DEFENDANT'S EXHIBIT # 5 at 14.[5] Also, ADPC & E Reg. No. 7, § 9, indicates that "[t]he violator's cooper-

ativeness and efforts to correct the violation" are valid factors in determining the amount of the civil penalty.

Plaintiff also complains that ADPC & E granted two large extensions of time to comply with the CAO in return for two $500 penalties. According to plaintiff, the stipulated penalties in the CAO would have been over $50,000 on the first occurrence and over $120,000 on the second. Plaintiff cites two cases for its statement that, "When a state does not demand compliance with its orders and grants extensions of time, its prosecution is not diligent." PLAINTIFF'S BRIEF IN OPPOSITION at 36. Although both cases involve situations where a state agency allowed numerous extensions for the permittee to comply, the cases are distinguishable from the facts at bar.

In *Dague v. City of Burlington,* 935 F.2d 1343, 1353 (2d Cir.1991), the defendant, City of Burlington, failed to install two systems which were required by the Assurance entered into between the defendant and the state. The only action taken by the state to enforce the Assurance was taken after the deadline for installation had already passed. In addition, the plaintiff had already filed the lawsuit and the district court had already ordered the defendant to install the systems. Given this background, the court stated, "Beyond this one action, the state made no attempt to ensure compliance with the rest of the Assurance; instead it allowed the city numerous extensions."

The second case cited by plaintiff is *New York Coastal Fishermen's Assoc. v. New York City Dep't of Sanitation,* 772 F.Supp. 162 (S.D.N.Y.1991). There, the court dealt with a situation in which the defendant and the state entered into a consent order in 1985 that allowed a deadline for project comple-

5. In pertinent part, the deposition reads:
Q. How did you calculate that penalty?
A. It was based upon professional judgment, based upon their having developed a plan that we weren't even aware of that they had presented at the meeting, that they were taking action before we called them into a meeting, and looked at the number of violations and addressed the $1,000 penalty.

Q. Why did you go with the minimum?

A. Because they had taken action on developing a plan which was going to involve some capital outlay. It wasn't a problem that was being ignored. They were already addressing it, so we decided we'd go with the minimum penalty.

tion of December 31, 1989. Under that order a temporary plan was to have been submitted by December 31, 1986. However, after what the court characterizes as "irrelevant excuses for the delay," the defendant submitted the temporary plan in July of 1988. This plan was rejected and another order was entered into in 1990. Oral arguments revealed that the new estimated time for project completion was 1995. The court stated:

> This is simply too long to rectify a problem that has been known about since 1983. . . . As defendants themselves recognize, "citizen suits [can proceed in] those instances where the federal and state entities are not fulfilling their enforcement duties." This is precisely such an instance when the government has not been fulfilling its duties.

*Id.* at 169 (citations omitted).

The egregious facts found in these two cases are not present in the case at hand. As defendant points out, the extensions in this case were based on defendant's requests for additional time so that more research could be done on the source and possible remedies of noncompliances that were occurring with zinc. The evidence shows that the first extension was granted after a meeting with ADPC & E and a subsequent written request. This request indicates that almost all of the engineering changes under the project action plan submitted by defendant and approved under the CAO were completed prior to the December 31, 1991, deadline and that defendant had identified all sources of contamination with the exception of zinc. *See,* DEFENDANT'S EXHIBIT # 10. In regards to the second extension, the cover letter on defendant's request for a construction permit for outfall 004 evidences defendant's intent to combine the existing outfalls into one new outfall and it's belief that by doing so it could comply "with each of the permit parameters, including zinc." *See,* DEFENDANT'S EXHIBIT # 15.

In sum, the extensions granted in this case were based on defendant's needs for additional time to address and correct problems that existed in the levels of zinc occurring in the outfalls. Given defendant's level of action during these periods, its apparent at-tempts to remedy the problem, and the relatively short periods of time granted, it was a reasonable course of action for ADPC & E to grant these extensions.

Plaintiff next points out that ADPC & E waived any further penalties for future reported zinc violations. In plaintiff's opinion, "PC & E simply gave defendant a license to pollute." However, defendant cites a memorandum in which Randal Oberlag, ADPC & E Enforcement Engineer/Attorney states that:

> The implementation strategy for metals is currently being developed by the Department based on EPA Rule promulgation and as a result the Department is unable to continue with this request. Until the strategy is finalized, limits on metals for permits and permit modifications cannot be given. Since ICI's present permit expires on Oct. 31, 1993, and there is no methodology at present for giving zinc limits, the Amendment extending monitoring and reporting conditions through Oct. 31, 1993 and requiring "report only" for zinc was appropriate. The facility agreed to be bound by the remaining limits of the "3 terminated outfalls" for Outfall 004.

*See,* DEFENDANT'S EXHIBIT # 2 (attached to Defendant's Response to Plaintiff's Amended Motion (# 63)). Apparently, ADPC & E is currently developing its strategy for setting limits on discharge of metals such as zinc.

In the Court's opinion, defendant has demonstrated that ADPC & E is diligently prosecuting its enforcement action against defendant. What plaintiff characterizes as arbitrary decisions on the part of ADPC & E appear to the Court as reasoned cooperative efforts to remedy noncompliances with the permit. Under the circumstances described above, this Court is of the opinion ADPC & E's efforts to remedy the permit violations must be characterized as diligent prosecution. It cannot be said that ADPC & E has failed "to exercise [its] enforcement responsibility." *Gwaltney,* 484 U.S. at 61.

**B. Section 1319(g)(6)(A)(iii)**

Given this Court's opinion on the applicability of § 1319(g)(6)(A)(ii), it is unnecessary

to address defendant's arguments that § 1319(g)(6)(A)(iii) also preclude plaintiff from bringing the present action.

### III. 33 U.S.C. § 1319(g)(6)(B)

■ Defendant next argues that neither of the two exceptions contained in § 1319(g)(6)(B) are applicable to this case. That section reads:

The limitations contained in subparagraph (A) on civil penalty actions under section 1365 of this title shall not apply with respect to any violation for which—

(i) a civil action under section 1965(a)(1) of this title has been filed prior to commencement of an action under this subsection, or

(ii) notice of an alleged violation of section 1365(a)(1) of the title has been given in accordance with section 1365(b)(1)(A) of this title prior to commencement of an action under this subsection and an action under section 1365(a)(1) of this title with respect to such alleged violation is filed before the 120th day after the date on which such notice is given.

Plaintiff argues only that subsection (ii) is applicable. According to plaintiff, if the April, 1991, CAO constitutes (and this Court has held that it does) the commencement of an action, the Corrected CAO and the amendments thereto must also constitute the commencement of new enforcement actions that did not begin before it gave notice of its intention to file suit. The Court disagrees. The Corrected CAO and the amendments thereto represent an ongoing enforcement action on ADPC & E's behalf. To adopt plaintiff's broad interpretation would hamper ADPC & E's ability to conduct ongoing negotiations with permit holders outside the realms of the filing an actual adversary lawsuit. To the contrary, defendant and ADPC & E have been able to cooperate and avoid such a suit, and the Court cannot accept plaintiff's interpretation.

### IV. THE SCOPE OF 33 U.S.C. § 1319(g)(6)

■ Plaintiff argues that § 1319(g)(6) bars only actions seeking civil penalties and not

actions for injunctive relief. *See, New York Coastal Fishermen's Ass'n v. New York City Dep't of Sanitation,* 772 F.Supp. 162, 169 (S.D.N.Y.1991), and *PIRG v. Witco Chemical Corp.,* 31 ERC 1571, 1576, 1990 WL 66178 (D.N.J.1990). However, the First Circuit in *Scituate* reached a contrary conclusion. In response to the plaintiff's argument that the literal language of § 1319(g)(6) speaks only of civil penalties and that the ban on citizen suits only extends to penalty actions, the court stated:

Even if the literal reading of section [1319] does lead to such a result, that result would lead to deferring to the primary enforcement responsibility of the government only where a penalty is sought in a civilian action, as if the policy considerations limiting civilian suits were only applicable within that context. Such a result would not only be undesirable, *see Gwaltney* 484 U.S. at 60–61, 108 S.Ct. at 383–384, it would be absurd.

*Scituate,* 949 F.2d at 558. This Court is in agreement that the policy considerations which prevent plaintiff from bringing a contemporaneous civil penalty action also must preclude plaintiff's injunctive and declaratory requests. Until it is shown that ADPC & E is not diligently pursuing their enforcement action against defendant, its efforts to remedy the situation should not be hampered by contemporaneous citizen suits.

### V. CONCLUSION

In sum, the Court is of the opinion that ADPC & E is diligently prosecuting an enforcement action under a state law that is comparable to federal law and that plaintiff's complaint should be dismissed in its entirety. Any remaining motions in this matter are moot.

IT IS SO ORDERED.