**Laverne and Pat SABOE, et al., Plaintiffs,**

**v.**

**STATE OF OREGON, et al., Defendants.**

**Civ. No. 92–1025–HO.**

United States District Court, D. Oregon.

Feb. 8, 1993.

Michael E. Haglund and Michael K. Kelley, Haglund & Kirtley, Portland, OR, for plaintiffs.

William F. Cloran, Dept. of Justice, Trial Div., Salem, OR, for defendants State of Oregon, Dept. of Transp., Highway Div., and State Lands Div.

Herbert G. Grey and W.A. Jerry North, Schwabe, Williamson & Wyatt, Portland, OR, for defendant Gen. Const. Co.

Philip R. McConville and John F. Kilcullen, Brown, Roseta, Long & McConville, Eugene, OR, for defendant Donald B. Murphy Contractors.

John S. Folawn, Homes, Folawn & Rickles, Portland, OR, for defendant JC Enterprises, Inc.

## ORDER

HOGAN, District Judge.

Plaintiffs allege a single cause of action under the Federal Water Pollution Control Act, (the "Clean Water Act" or "CWA"), 33 U.S.C. § 1251 et seq., and seven pendent state claims.

The state defendants filed "Federal Rule of Civil Procedure Rule 12 Motions" (# 16), which is comprised of 17 separate rule 12 motions.[1] Motion # 1 is a motion to dismiss plaintiffs' federal claim under the CWA. The other 16 motions relate to the pendent state claims. Plaintiffs seek a mandatory preliminary injunction (# 18) requiring defendants to perform certain actions.

After oral argument and supplemental briefing on defendants' rule 12 motions and plaintiff's motion for preliminary injunction, plaintiffs filed a first amended complaint (# 57). Plaintiffs' first amended complaint differs from the original complaint in that it adds new plaintiffs and a claim based on abnormally dangerous activity.

The state of Oregon defendants have filed motions in response to plaintiffs' amended complaint (# 63), which substantially repli-

---

1. Defendant Donald B. Murphy Contractors filed a separate motion (# 46) joining in the motions filed by the state of Oregon defendants.

cate the state's motions against the original complaint.

Defendants' rule 12 motions (# 16) are rendered moot by plaintiffs' first amended complaint and are denied. The exhibits and arguments submitted concerning those motions will be considered and construed as to the first amended complaint (# 57).

This case arises from the demolition of the old Alsea Bay Bridge. The side spans of the bridge were demolished by pounding them onto the tidal flat of the estuary, which formed a rubble road or causeway to allow machinery to go out into the bay to retrieve chunks of main span rubble and debris from the channel. After the main span debris was removed, the contractors removed the debris which formed the causeway beginning at the channel and working toward the upland. The parties disagree over the extent to which the debris was actually removed.

Plaintiffs, a group of beachfront homeowners, crab and bait fishermen, and bait dealers, allege that the bridge removal caused major changes in the hydrology and topography of the bay.

Permits for blasting were granted by the Oregon Division of Fish and Wildlife. Neither the Highway Division nor the contractor sought the necessary modifications of the Army Corps of Engineers or Division of State Lands (DSL) fill and removal permits (obtained for construction of a new bridge) to cover the debris falling into the bay. Upon realizing that the permits may not have covered the old bridge demolition, the Highway Division informed the DSL and the Army Corps of the situation. The Army Corps deferred to DSL to undertake enforcement action. On December 12, 1991, DSL issued an administrative consent order, fining the Oregon Department of Transportation (ODOT) and requiring clean up of remaining debris and restoration of the tidal zone and bay floor.

Plaintiffs did not participate in the enforcement action, although a number of them presented tort claim notices on November 7, 1991, and December 4, 1991. The DSL enforcement action was reported in newspapers in the area as early as October 31, 1991.

Plaintiffs allege federal jurisdiction under the CWA "citizens suit" provision, 33 U.S.C. § 1365. The citizens suit provision is intended to allow private attorneys general to fill in gaps in public enforcement and are proper only if the federal, state, and local agencies fail to exercise their enforcement responsibility. *Gwaltney of Smithfield, LTD. v. Chesapeake Bay Foundation,* 484 U.S. 49, 108 S.Ct. 376, 98 L.Ed.2d 306 (1987); *Connecticut Coastal Fishermen Assn. v. Remington Arms Co.,* 777 F.Supp. 173, 180 (D.Conn.1991). The right to maintain a citizens suit is limited however, and may not be brought if appropriate federal or state regulatory agencies have undertaken their own enforcement action to correct a violation. 33 U.S.C. §§ 1365(b)(1)(B) and 1319(g)(6).

Defendants contend that the present action is barred because the prior enforcement action brought against ODOT by DSL fits the criteria established by 33 U.S.C. § 1319(g)(6).

33 U.S.C. § 1319(g)(6) provides in part:
... that any violation—

(i) with respect to which the Administrator or the Secretary has commenced and is diligently prosecuting an action under this subsection,

(ii) with respect to which a State has commenced and is diligently prosecuting an action under State law comparable to this subsection, or

(iii) for which the Administrator, the Secretary, or the State has issued a final order not subject to further judicial review and the violator has paid a penalty assessed under this subsection, or such comparable State law, as the case may be, shall not be the subject of a civil penalty action under subsection (d) of this section or section 1321(b) of this title or section 1365 of this title.

There is no question that a final administrative order assessing a civil penalty against ODOT has been issued by the state of Oregon. The issue before the court is whether the DSL administrative enforcement action against ODOT under ORS 196.855 *et seq.,* for the same violation now alleged by plaintiffs in this action, was undertaken pursuant to

state laws "comparable" to the CWA fill and removal provisions. Comparable state law, as used in section 1319(g)(6), does not mean that the state's regulatory authority or processes must be identical to the federal provisions. *Serria Club v. Port of Townsend Paper Corp.*, 19 Envtl.L.Rep. 20532, 1988 WL 160580 (W.D.Wash.1988).

Defendants contend that Oregon's fill and removal law, ORS 196.855 *et seq.*, "nearly mirror" the substantive terms of the CWA and that the relief afforded under the Oregon law is "without question comparable" to that of the CWA. State Defendants' Memorandum (# 16), p. 11. Defendants contend that because there has been a state agency enforcement proceeding, a final order and a penalty assessed, section 1319(g)(6)(A)(iii) bars this action arising from the same violation. *See* State Defendants' Memorandum (# 63), p. 12.

Plaintiffs contend that the prior enforcement proceeding does not bar this action because DSL was not acting under a comparable state law when it negotiated the consent decree with ODOT. Plaintiffs contend that the CWA provides a "litany" of rights to concerned citizens and that Oregon law does not provide a "comparable array of safeguards to the public." Plaintiffs' Memorandum in Opposition (# 26), pp. 7, 8. Plaintiffs rely primarily on the fact that the Oregon statute does not require public notice of enforcement proceedings and does not require an opportunity for public comment or provide participation rights to concerned citizens.

A review of the administrative enforcement procedures under the state and federal statutes reveals that, although not identical, the procedures followed by DSL are substantially similar to those of the Army Corps of Engineers and the United States Environmental Protection Agency (EPA).

Under the federal scheme, when the Corps decides not to assess a penalty, it may issue an order requiring abatement of an illegal fill or removal. 33 U.S.C. § 1344(s)(3). In such instances, the Corps is required to issue an order to the violator and notify the proper state authorities where the violation occurred. The CWA does not require an opportunity for comment be extended to the public on such orders. Either the Corps or the EPA may issue an order assessing a civil fine for fill and removal violations pursuant to 33 U.S.C. § 1319(g)(1). In instances where a penalty is assessed, other interested parties, i.e., members of the public, have a right to notice and an opportunity to comment on the proposed enforcement action. Any person who comments can request a public hearing. Requests for hearings are not granted automatically; a hearing is required only "if the evidence submitted [in support of the request for a hearing] ... is material and was not considered in the issuance of the [civil penalty order]...." 33 U.S.C. § 1319(g)(4)(C).

The procedures of DSL for abatement of an illegal fill and assessment of civil penalties is similar to the federal process. The statute provides for notice and an opportunity for the penalized party to have a hearing. ORS 196.860(1)(e). Interested parties other than the penalized party may participate at the hearing. ORS 196.860(1)(e). Even if a hearing is not held at the request of the violator, the director of DSL has the authority to hold a public hearing and accept public comment regarding the violation and proposed remedy. ORS 196.860(1)(a) and (c). Any person "adversely effected or aggrieved" by a DSL order is entitled to judicial review of that order. ORS 183.480.

The only significant difference between state procedures and federal procedures is that although the state statute authorizes DSL to conduct hearings and receive public input, it does not require public notice and opportunity for comment on a proposed enforcement action.

■ Mandatory public notice and participation rights have been held to be an indispensable element in determining "comparability." *See Public Interest Research Group v. GAF Corp.*, 770 F.Supp. 943 (D.N.J.1991) [state law not comparable when it does not provide the public with notice and an opportunity to participate in the assessment of civil administrative fines and penalties]; *Atlantic States Legal Foundation v. Universal Tool*, 735 F.Supp. 1404 (N.D.Ind.1990) [state law not comparable within meaning of section

1319(g) when it does not require public notice of matters concluded by consent decree].

In *Connecticut Coastal Fishermen v. Remington Arms*, 777 F.Supp. 173 (D.Conn.1991), the court held a Connecticut state statute comparable to the CWA because the state agency was required to provide a public hearing on request and submit to judicial review.

However, mandatory public notice is not necessarily the *sine qua non* of comparability. In *North and South Rivers Watershed Ass'n v. Town of Scituate*, 755 F.Supp. 484 (D.Mass.1991), the Massachusetts statute at issue did not provide for prior public notice of enforcement orders. However, the court noted that such orders were public documents and that any individual could intervene in any subsequent adjudicatory proceeding brought to assess a civil penalty upon a showing of good cause. The court concluded that the state law was comparable because the overall regulatory scheme adequately protected the public interest in enforcement actions.

A district court within the Ninth Circuit has also rejected the argument that public notice and participation rights are essential to a finding of comparability.

The plaintiff argues that the state and federal law are not comparable because only the federal law requires public notice of enforcement activity and an opportunity for the public to participate in enforcement proceedings. The court agrees that the absence of public notice and participation are significant omissions from the state procedures. Nevertheless, Congress only required that the state law be "comparable," not "identical," to the federal provisions. Consequently, an exact duplication of even important federal procedures is not required.

*Serria Club v. Port of Townsend Paper Corp.*, 19 Envtl.L.Rep. 20532, 20534 (W.D.Wash.1988).

■ I find that despite the lack of mandatory public notice and participation rights, state of Oregon procedures adequately protect the substantive public interest of citizens in enforcement actions and are comparable to the CWA.

There is an important policy consideration that supports this conclusion. As noted in *Serria Club v. Port of Townsend Paper Corp., supra,* at 20534:

Furthermore, the court is mindful of the unfair position in which defendants would be placed were they subject to more than one enforcement action for a single permit violation. Apparently, Congress amended § 1319 in order to avoid this spectre (sic) of double jeopardy.

To allow plaintiffs' CWA claim in spite of DSL's prior enforcement order would impact the agency's ability to exercise its enforcement responsibilities in the future. It is doubtful that an alleged violator would fully cooperate with DSL to resolve a wetlands fill or removal violation if they lacked assurance that the same violation would not be the subject of a citizens suit in federal court at some later time. The consequences of subjecting violators to more than one enforcement action for a single violation constitutes an important policy consideration which favors a finding of comparability.

Plaintiffs also allege they have standing to bring this action because DSL did not penalize the same violations and violators plaintiffs seek to address. Plaintiff's Memorandum in Opposition (# 26), p. 11. Plaintiffs argue that DSL assessed a penalty only against ODOT but that they seek to hold "all parties to the project responsible for the degradation of Alsea Bay." *Id.,* p. 12.

■ However, CWA citizens suits are not appropriate simply because the plaintiff has more claims than were resolved by a prior government enforcement action, or because the plaintiff seeks higher civil fines than were levied by the government. *Connecticut Fund for the Environment v. Contract Plating Co.*, 631 F.Supp. 1291 (D.Conn. 1986). Plaintiffs are not entitled to a "personalized" remedy in CWA citizens suits. *Hudson River Fishermen Ass'n. v. County of Westchester*, 686 F.Supp. 1044, 1052 (S.D.N.Y.1988).

The Supreme Court has held that the purpose of CWA citizens suits is to supplement,

not supplant, action by federal or state governments and are proper only "if the Federal, State and local agencies fail to exercise their enforcement responsibility." *Gwaltney of Smithfield Ltd. v. Chesapeake Bay Foundation, Inc., supra,* 484 U.S. at 60, 108 S.Ct. at 383.

■ The Clean Water Act violations alleged in this action have already been addressed by the Oregon Division of State Lands in a manner which precludes plaintiffs' standing in federal court. The December, 1991 administrative order issued by DSL pursuant to Oregon's Fill and Removal Law was a state enforcement action pursuant to substantive and procedural laws comparable to the CWA and bars subsequent lawsuits arising from the same violation. 33 U.S.C. § 1319(g)(6)(A)(iii). Therefore, plaintiffs lack standing to raise the CWA claims alleged in this lawsuit. There is no basis for federal jurisdiction on the remaining claims.

Defendants' rule 12 motions (# 16) are rendered moot by plaintiffs' first amended complaint and are denied; defendants' motion to dismiss (# 63) is allowed; plaintiffs' motion for preliminary injunction (# 18) is denied.