**WASHINGTON PUBLIC INTEREST RE- SEARCH GROUP ("WASHPIRG"), Plaintiff–Appellant,**

v.

**PENDLETON WOOLEN MILLS, Defendant–Appellee.**

No. 92–35105.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 31, 1993.

Dec. 1, 1993.

---

Charles C. Caldart and David A. Nicholas, Nat. Environmental Law Center, Boston, MA, and Corrie J. Yackulic, Schroeter, Gold-mark & Bender, Seattle, WA, for plaintiff-appellant.

Jeffrey W. Leppo, Bogle & Gates, Seattle, WA, for defendant-appellee.

Nancy K. Stoner, U.S. Dept. of Justice, Washington, DC, for amicus-curiae.

Before: WALLACE, Chief Judge, BOOCHEVER and NOONAN, Jr., Circuit Judges.

WALLACE, Chief Judge:

On this appeal we decide whether citizens may bring a suit seeking penalties against a violator of the Clean Water Act, 33 U.S.C. § 1251 *et seq.* (Act), when the Environmental Protection Agency (EPA) has already instituted an administrative compliance action in the same matter. The district court had jurisdiction over the Washington Public Interest Research Group's (WashPIRG) citizen suit against Pendleton Woolen Mills, Inc. (Pendleton) pursuant to 33 U.S.C. § 1365(a)(1) and granted summary judgment to Pendleton. We have jurisdiction over WashPIRG's timely appeal pursuant to 28 U.S.C. § 1291, and we reverse.

I

Pendleton operates a textile mill in Washougal, Washington, at which it cleans, spins, weaves and dyes wool. These operations create wastewater containing oil, grease, chromium, zinc, and other pollutants within the meaning of the Act, 33 U.S.C. § 1362(6). Acceptable levels for Pendleton's wastewater discharge into the Columbia River and an unnamed tributary of Gibbons Creek, are established by its National Pollutant Discharge Elimination System (NPDES) permit. Discharge of a pollutant in violation of its NPDES permit would put Pendleton in violation of the Act, 33 U.S.C. § 1311(a).

The EPA issued a compliance order on August 5, 1988, stating that Pendleton was in violation of its NPDES permit. The order required Pendleton to prepare a report de-

scribing the causes of the violations and identifying the actions necessary to bring it into compliance. The order further required Pendleton to make those physical improvements identified as necessary. An amended compliance order set the target date for these improvements at October 31, 1990. The order included the threat of a sanction of $25,000 per day if Pendleton violated its terms.

Although Pendleton made substantial improvements, there is some evidence that Pendleton's wastewater discharge has exceeded permit limitations since EPA issued its initial compliance order. For example, in November 1989, the EPA stated in an amended compliance order that zinc concentrations in some of the wastewater regularly exceeded the permitted levels. Pendleton admits that at unspecified times in the past it has exceeded its permit limitations. However, the facts of Pendleton's permit violations are in dispute, and the district court could not make any factual findings on that subject in its summary judgment. Nor should we reach any such factual determinations.

On December 21, 1990, in accordance with the citizen suit provisions of the Act, 33 U.S.C. § 1365, WashPIRG notified the EPA and Pendleton of its intent to bring suit against Pendleton for alleged permit violations. More than the required 60 days thereafter, 33 U.S.C. § 1365(b)(1)(A), Wash-PIRG filed a complaint primarily seeking (1) a declaration establishing Pendleton's violations of the Act; (2) an injunction ordering Pendleton into compliance; (3) civil penalties for Pendleton's violations from December 1985 to the present. The district court entered summary judgment in favor of Pendleton, holding that the existence of the EPA's compliance action against Pendleton barred WashPIRG's citizen suit.

■■ We review de novo the district court's summary judgment. *Jones v. Union Pac. R.R.,* 968 F.2d 937, 940 (9th Cir.1992). We must determine whether the district court correctly applied the relevant substantive law. *Federal Deposit Ins. Corp. v. O'Melveny & Meyers,* 969 F.2d 744, 747 (9th Cir.1992), *cert. granted,* —— U.S. ——, 114 S.Ct. 543, 126 L.Ed.2d 445 (1993).

## II

■ The Act authorizes a citizen to commence a civil action against any person who is alleged to be in violation of an effluent standard or limitation. 33 U.S.C. § 1365(a). However, the authority to bring a citizen suit is limited by 33 U.S.C. § 1319(g)(6). That section governs the EPA's authority to seek administrative penalties, and contains protections ensuring that administrative penalties will not be duplicative of other penalties imposed on a person who is in violation of the Act.

> Action taken by the Administrator ... under this subsection shall not affect or limit the Administrator's ... authority to enforce any provision of this chapter; except that any violation—
>
> > (i) with respect to which the Administrator ... has commenced and is diligently prosecuting an action under this subsection,.... shall not be the subject of a civil penalty action under ... section 1365 of this title.

33 U.S.C. § 1319(g)(6)(A). Thus, section 1365, the citizen suit provision, is among those enforcement provisions that may not be used to seek civil penalties when the EPA is diligently pursuing an administrative penalty action.

The plain language of the statute states that such suits are barred only when the EPA is prosecuting an action "under this subsection," i.e., section 1319(g), which deals only with administrative penalty actions. We are unaware of any legislative history demonstrating a congressional intent to extend the bar on citizen suits created in section 1319(g)(6)(A) to a context other than an administrative penalty action. In this case, the EPA was not pursuing an administrative penalty under section 1319(g). Rather, the EPA acted pursuant to section 1319(a) when it issued a compliance order to Pendleton. The imposition of an administrative penalty requires elaborate procedures including hearings as well as public notice and comment, none of which took place. 33 U.S.C. § 1319(g)(4). Nor did the EPA purport to

issue its compliance order pursuant to the provisions of section 1319(g).

Recognizing that the language of the statute does not bar citizen suits absent an administrative penalty action, the district court nevertheless held, and Pendleton now argues, that we should look beyond the plain language of the statute to bar citizen suits when the EPA has instituted an administrative compliance action as well as when the EPA has diligently sought an administrative penalty.

The district court departed from the language of the statute because it was convinced by the First Circuit's reasoning in *North & South Rivers Watershed Ass'n v. Scituate*, 949 F.2d 552 (1st Cir.1991). *Scituate* did not construe the statutory provision at issue in this case, section 1319(g)(6)(A)(i); rather, it construed a neighboring provision, section 1319(g)(6)(A)(ii), which bars citizen suits when a state is prosecuting an action "comparable" to an EPA action for administrative penalties under section 1319(g). Relying upon the desirability of preserving the enforcement authority's discretion to choose enforcement methods, *Scituate* held that a citizen suit is barred even when a state is not prosecuting a penalty action, but only a compliance action. *Id.* at 555–56. Unlike the district court, we are not persuaded by the First Circuit's reasoning in our analysis of section 1319(g)(6)(A)(i).

Our conclusion that WashPIRG's citizen suit is not barred is compelled by the language of the statute which unambiguously bars suits only when the EPA has instituted an administrative penalty action. "If the intent of Congress is clear, that is the end of the matter; for the court ... must give effect to the unambiguously expressed intent of Congress." *Chevron U.S.A. v. Natural Resources Defense Council*, 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694 (1984).

Drawing on the reasoning in *Scituate*, Pendleton argues that Congress intended the EPA to have control over the course of enforcement proceedings under the Act, and intended the EPA to be able to pursue compliance actions free from citizens who seek penalties that the EPA thinks are not yet warranted. In its support, Pendleton cites statements by the Supreme Court regarding the balance Congress intended to create between EPA enforcement discretion and citizen suits. In its analysis of 33 U.S.C. § 1365(b)(1)(B), a separate subsection of the Act barring citizen suits when the EPA is prosecuting an action in court, the Supreme Court stated that "the citizen suit is meant to supplement rather than to supplant governmental action" and expressed concern that the EPA be able to maintain its enforcement discretion. *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Foundation*, 484 U.S. 49, 60–61, 108 S.Ct. 376, 382–383, 98 L.Ed.2d 306 (1987) (holding that citizen suits can address only *ongoing* violations and stating hypothetically that the EPA's discretion would be hampered if citizens could file penalty suits months or years after the EPA had decided to forego penalties).

However, general arguments about congressional intent and the EPA's need for discretion cannot persuade us to abandon the clear language that Congress used when it drafted the statute. "The most persuasive evidence of ... [congressional] intent is the words selected by Congress," *Turner v. McMahon*, 830 F.2d 1003, 1007 (9th Cir.1987) (citations and internal quotation marks omitted), *cert. denied*, 488 U.S. 818, 109 S.Ct. 59, 102 L.Ed.2d 37 (1988), not a court's sense of the general role of citizen suits in the enforcement of the Act. *Gwaltney* itself stresses that "the language of the statute itself" should be the first place we turn to in our analysis. 484 U.S. at 56, 108 S.Ct. at 380.

Our reading of the statute's clear language is underscored by evidence that if Congress had intended to preclude citizen suits in the face of an administrative compliance order, it could easily have done so, as it has done in certain other environmental statutes. *See, e.g.,* Resource Conservation and Recovery Act of 1976, 42 U.S.C. § 6972(b)(2)(B)(iv) (barring citizen suit when the EPA has issued an abatement order); Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. § 9659(d)(2) (barring citizen suit when the EPA is "diligently prosecuting an action ... to require compliance"). Congress did not draft the Act to

bar citizen suits when EPA is pursuing an administrative compliance order, and we may not disregard the clear language of the statute.

## III

The district court also dismissed WashPIRG's claim for injunctive relief. WashPIRG argues that the district court erred in dismissing this claim along with the claim for civil penalties, because 33 U.S.C. § 1319(g)(6) bars only citizen *penalty* suits, not suits for injunctive relief. Because we hold that the compliance order pursued by the EPA does not bring into play the citizen suit preclusion provision of section 1319(g)(6), we need not reach the question of whether a citizen suit seeking injunctive relief would ever be barred by section 1319(g).

## IV

WashPIRG seeks attorneys' fees, pursuant to 33 U.S.C. § 1365(d). That section authorizes the court, upon "issuing any final order," to award attorneys' fees "to any prevailing or substantially prevailing party." *Id.* WashPIRG would be a prevailing party if "as a factual matter, the relief sought by the lawsuit was in fact obtained as a result of having brought the action." *Idaho Conservation League v. Russell,* 946 F.2d 717, 719 (9th Cir.1991), *quoting Andrew v. Bowen,* 837 F.2d 875, 877 (9th Cir.1988). Though WashPIRG has prevailed on this appeal, it has not yet prevailed in "what the lawsuit originally sought to accomplish," *id.,* rather it has only established that the district court has jurisdiction to decide the suit. Thus, attorneys' fees are inappropriate at this stage in the litigation.

We reverse and remand to allow WashPIRG to pursue its claims against Pendleton.

**REVERSED AND REMANDED.**