**KNEE DEEP CATTLE CO.,
et al., Plaintiffs,**

v.

**BINDANA INVESTMENTS
CO., et al., Defendants.**

Civ. No. 94–6156–TC.

United States District Court,
D. Oregon.

Feb. 8, 1995.

Bill Kloos, Johnson & Kloos, Eugene, OR, David C. Moon, Moon Consulting, Eugene, OR, for Plaintiffs.

Jens Schmidt, Harrang Long, Gary Rudnick, Eugene, OR, Glenn Klein, Harrang Long, Gary Rudnick, Eugene, OR, for Defendants.

## ORDER

HOGAN, Chief Judge.

Magistrate Judge Thomas M. Coffin filed Findings and Recommendation on November 3, 1994, in the above entitled case. The matter is now before me pursuant to 28 U.S.C. § 636(b)(1)(B) and Fed.R.Civ.P. 72(b). When either party objects to any portion of a magistrate judge's Findings and Recommendation, the district court must make a *de novo* determination of that portion of the magistrate judge's report. *See* 28 U.S.C. § 636(b)(1); *McDonnell Douglas Corp. v. Commodore Business Machines, Inc.*, 656 F.2d 1309, 1313 (9th Cir.1981), *cert. denied*, 455 U.S. 920, 102 S.Ct. 1277, 71 L.Ed.2d 461.

Plaintiffs have filed timely objections. I have therefore, given *de novo* review of Magistrate Judge Coffin's rulings and find as follows.

Plaintiffs filed a citizens suit under the Clean Water Act (CWA) alleging violations of the CWA and Oregon's water pollution laws in connection with defendants' sewage treatment facility near Coburg, Oregon.

Defendants moved to dismiss (# 12) on the ground that a previous, on-going enforcement action by the Oregon Department of Environmental Quality (DEQ) precludes a citizens suit under the CWA.

Judge Coffin issued a Findings and Recommendation which concluded that the state of Oregon has diligently prosecuted an enforcement action under a comparable state law and that plaintiffs' citizens suit is therefore precluded.

Plaintiffs' objections are based on their contention that the 9th Circuit decision in *WashPIRG v. Pendleton Woolen Mills*, 11 F.3d 883 (9th Cir.1993), held that citizens' suits are not barred when a compliance action (as opposed to a penalty action) is commenced.

Judge Coffin addressed plaintiffs' argument and found that plaintiffs' reliance on *WashPIRG* is misplaced because that case interpreted a provision of the CWA which is not at issue in this case. *See* Findings and Recommendation (# 28), pp. 5–8.

I agree with Judge Coffin's interpretation of *WashPIRG* and the statutes at issue in this case.

In addition, I find that the record supports the magistrate judge's conclusion that the DEQ has diligently prosecuted this matter and that the state laws and administrative rules under which the DEQ issued the stipulation and final order are comparable to the CWA.

Accordingly, I ADOPT the Findings and Recommendation. Defendants' motion to dismiss (# 12) is allowed.

Defendants move to strike the affidavit of David Moon and accompanying exhibits submitted in support of plaintiffs' objections to

the magistrate judge's Findings and Recommendation. Defendants' Response (# 33), p. 2.

Defendants' motion is denied as to the exhibits themselves and as to that portion of David Moon's affidavit that authenticate the exhibits (paragraph 2). Defendants' motion to strike is allowed as to the remainder of Mr. Moon's affidavit.

## FINDINGS AND RECOMMENDATIONS

COFFIN, United States Magistrate Judge:

Plaintiffs have filed a citizen suit under the provisions of the Federal Clean Water Act. They contend that the Oregon Department of Environmental Quality (DEQ) has not diligently prosecuted violations of the Federal Clean Water Act under a comparable state law.

Presently before the court is defendants' motion to dismiss for lack of subject matter jurisdiction (# 11).

### FACTS

Plaintiffs and defendants are neighbors in Lane County, Oregon. A tributary of Muddy Creek, known as "Little Muddy Creek," runs through or along both of their properties. Plaintiffs run a cattle feeder and breeding operation on their property. Defendants operate an RV park and sewage treatment facility. Defendants hold a National Pollution Discharge Elimination System (NPDES) permit issued pursuant to ORS 468.740 and the Federal Clean Water Act (CWA). The NPDES permit allows defendant to discharge treated effluent into Little Muddy Creek during the winter months.

Defendants have not complied with the terms of the permit, due in large part to the fact that the waste treatment facility is old. As a result of the permit violations, discharged waste has allegedly seeped into the groundwater immediately adjacent to Little Muddy Creek. Plaintiffs contend that such seepage has directly resulted in degradation of the quality of the water utilized by plaintiffs for irrigation and stockwatering, caused discoloration and odor of the water, and deprived plaintiffs of the beneficial use of said water.

In 1993 the problems became worse, resulting in more aggressive enforcement action by DEQ which culminated in an order to completely upgrade or replace the wastewater facility. Actions taken by DEQ include: on June 18, 1993 DEQ issued a Notice of Noncompliance; on August 4, 1994 DEQ issued a Notice of Permit Violation (NPV) and a Notice of Civil Penalty. The NPV required defendants to submit a "written proposal to bring the facility into compliance with the permit." The Notice of Civil Penalty assessed a $1,400 civil penalty which was paid by defendants on August 31, 1993.

DEQ and defendants privately negotiated terms for a remedial agreement which resulted in the January 14, 1994 Stipulation and Final Order (SFO). The SFO set a plan to upgrade the sewage treatment plant at a cost of $175,000 to $200,000. However DEQ recognized that until the plant was completed, violations would likely continue and therefore set interim discharge limits. The SFO also established stipulated penalties for "each violation of the compliance schedule" and for "each violation of the interim waste discharge limitations." No penalties were assessed in the SFO for past violations. Subsequently in March and May of 1994, DEQ issued two Civil Penalty Demand Notices for violations of the SFO.

### DISCUSSION

#### A. Standing Requirements Under the Clean Water Act

In its original form, the CWA provided that the Administrator of the Environmental Protection Agency, a State, or a citizen with proper standing could commence a CWA suit against a violator in federal or state court. 33 U.S.C. s 1365(a); Oct. 18, 1972, P.L. 92–500, s2, 86 Stat. 888. However, because citizen suits were intended to supplement, rather than supplant, state and federal enforcement of the Act, citizen suits were limited to situations in which the federal and state authorities failed to act. *Gwaltney v. Chesapeake Bay Foundation, Inc.*, 484 U.S. 49, 60, 108 S.Ct. 376, 383, 98 L.Ed.2d 306 (1987). Section 1365(b)(1)(B) provides that no citizen

suit may be commenced by any person to enforce a standard, limitation or order, if the EPA or a state has commenced and is diligently prosecuting a civil or criminal action in a court of the United States or a State to require compliance with the same standard, limitation or order.

In 1987 the CWA was amended to allow the EPA Administrator and states to assess administrative penalties for violations of the CWA. 33 U.S.C. s 1319(g). As part of that amendment, Congress further limited the availability of citizen suits by precluding such suits when a state has commenced and is diligently prosecuting an action under a state law comparable to 33 U.S.C. s 1319(g), or when a state has issued a final order, not subject to further judicial review, and the violator pays a penalty assessed under a state law comparable to 33 U.S.C. § 1319(g).[1]

The jurisdictional issue presently before the court is whether the state has diligently prosecuted an action under a comparable state law. If it has, plaintiffs' action is precluded. 33 U.S.C. § 1319(g)(6)(A)(ii).

### B. Motion to Dismiss for Lack of Subject Matter Jurisdiction

Each of plaintiffs' arguments in opposition to defendants' motion to dismiss will be discussed separately.

#### 1. The Pendleton Case

Plaintiffs argue that a citizen suit is barred where the state has commenced an Administrative Penalty Action (hereinafter penalty action), but not when a compliance action is commenced, and that the state primarily commenced a compliance action. Plaintiffs base this argument on the Ninth Circuit's opinion in *WashPIRG v. Pendleton Woolen Mills*, 11 F.3d 883 (9th Cir.1994). Plaintiffs' reliance on this opinion is incorrect as the *Pendleton* court interpreted a provision of

the CWA which is not at issue in this case. As previously touched upon, 33 U.S.C. s 1319(g)(6) is a penalty section of the CWA and limits citizen suits in certain situations where government action has already commenced. The statute provides that any violation:

(i) with respect to which the Administrator or the Secretary has commenced and is diligently prosecuting an action under this subsection,

(ii) with respect to which a State has commenced and is diligently prosecuting an action under a State law comparable to this subsection, or

(iii) for which the Administrator, the Secretary, or the State has issued a final order not subject to further judicial review and the violator has paid a penalty assessed under this subsection, or such comparable State law, as the case may be, shall not be the subject of a civil penalty action under subsection (d) of this section or 1321(b) of this title or section 1365 of this title.

33 U.S.C. § 1319(g)(6)(A).

In *Pendleton*, the EPA commenced a compliance action; thus provision (i) relating to actions by the Administrator or Secretary of the EPA applied. The court determined, in looking at the direct language of the statute, that the legislature's failure to reference compliance actions in that provision meant that where the EPA brings a compliance action only, citizen suits are not precluded. 11 F.3d at 886.

This case, in contrast, involves DEQ, a state agency, thus provision (ii) applies.[2] Plaintiffs argue, however, that because *Pendleton* limited the applicability of provision (i) to penalty actions and the District Court of Oregon limited the applicability of provision (iii) to penalty actions, *Saboe v. Oregon*, 819 F.Supp. 914 (1993), the same limitation nec-

---

**1.** These limitations on citizen suits do not apply if the citizen suit was filed prior to the commencement of the state or EPA administrative action. Nor is a citizen suit precluded if notice of the alleged violation is given by the citizen plaintiff in accordance with 33 U.S.C. s 1365(b)(1)(A) prior to the commencement of the administrative action and the citizen suit for the same violation is filed within 120 days of the date

notice was given. These exceptions do not apply in this case as plaintiffs' notice was filed after the final agency order was signed by all parties.

**2.** Plaintiffs agree that 1319(g)(6)(A)(i) applies to actions by the EPA whereas (ii) applies to state action. (# 17, pp. 12–13).

essarily applies for state agency action under provision (ii).[3] This logic is incorrect, however, because the language of the provisions differ.

Provision (i) states that citizen suits are precluded when the EPA prosecutes "under this subsection." The subsection to which the provision refers is 33 U.S.C. § 1319(g) titled Administrative Penalties. The direct language of the statute clearly limits preclusion to situations in which the EPA brings a penalty action. In contrast, under provision (ii) citizen suits are precluded when state agency action is taken pursuant to a comparable state law. As discussed below, courts have interpreted a comparable state law to mean a law with the same basic penalty provisions and notice requirements as the CWA; a state is not required to assess a penalty, however, so long as the state law penalty assessment provisions are comparable to the federal act and the state is authorized to assess such penalties. *See North and South Rivers Watershed Assoc., Inc. v. Scituate,* 949 F.2d 552, 556 (1st Cir.1991); *See also Arkansas Wildlife Federation v. ICI Americas, Inc.,* 29 F.3d 376 (8th Cir.1994); *Saboe,* 819 F.Supp. 914.

In *Scituate* the First Circuit interpreted provision (ii) and held that a citizen suit is barred even when the state agency maintains a compliance action. *Scituate,* 949 F.2d at 555–56. Although *Pendleton* departed from the holding in *Scituate,* the *Pendleton* court made it clear that *Scituate* was not applicable to its decision in that the *Scituate* court had

interpreted provision (ii) whereas provision (i) was at issue in *Pendleton.* 11 F.3d at 886. The *Pendleton* court held that *Scituate's* interpretation could not be applied *to provision (i)* because the direct language of the two provisions differ. *Id.* The *Pendleton* court also stated:

> Our conclusion that WashPirg's citizen suit is not barred is compelled by the language of the statute which unambiguously bars suits only when the EPA has instituted an administrative penalty action. "If the intent of Congress is clear, that is the end of the matter; for the court … must give effect to the unambiguously expressed intent of Congress." *Chevron U.S.A. v. Natural Resources Defense Council,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694 (1984)

*Id.*[4]

The provision at issue in the case presently before this court is provision (ii). The State of Oregon is diligently prosecuting an action under an Oregon law comparable to 33 U.S.C. § 1319(g). As such, this citizen suit should be precluded. 33 U.S.C. § 1319(g)(6); *Scituate, supra; Arkansas Wildlife, supra.*

### 2. DEQ has Acted Pursuant to a Comparable State Law

Plaintiffs argue that the SFO was not issued under a comparable state law because Oregon law does not require public notice or public involvement in the enforcement proceeding.[5]

---

3. It must be noted that nowhere in *Saboe* did the court actually state that a penalty is required to bar citizen suits. However, under provision (iii) the clear language of the statute requires such a penalty.

4. I should note that even if the language of provision (ii) was not absolutely clear, there are very strong policy reasons for denying duplicative suits. The goal of the CWA is to "restore and maintain the chemical, physical, and biological integrity of the nation's waters." *Scituate,* 949 F.2d at 556 (quoting 33 U.S.C. s 1251(a)). The United States Supreme Court stated that both the language of the CWA and the legislative history show that the citizen suit was meant to supplement, not supplant, government action. *Gwaltney v. Chesapeake Bay Found.,* 484 U.S. 49, 60, 108 S.Ct. 376, 383, 98 L.Ed.2d 306 (1987). The Court stated that this result is necessary to

ensure proper enforcement by government officials. Enforcement agencies have discretion to enter agreements with violators. Under these agreements, violators may promise to voluntarily build or repair facilities and in return penalties may be reduced. If citizens are able to sue months or years later for those same violations, the polluters will not have the incentive to voluntarily build new facilities and ultimately reduce pollution. *See id.*

5. Plaintiffs also argue that the District Court of Oregon's holding in *Saboe,* which found the Oregon law comparable to the CWA, fails in light of the Ninth Circuit's decision in *Pendleton.* As stated above, however, *Pendleton* dealt with federal action which does not require enforcement under a comparable state law, whereas *Saboe* involved state action. Thus *Pendleton* is irrelevant to the finding of comparability in *Saboe.*

■ The essence of the bar on citizen suits is not whether the statutes have the same construction, but whether the enforcement action pursued by the state seeks to remedy the same violations as the duplicative action. *Scituate*, 949 F.2d at 556. In order to meet the comparable state law requirement of § 1319(g)(6)(A)(ii), the procedural provisions of the state law need not be identical to the federal process, they need only be substantially similar. *Saboe*, 819 F.Supp. at 917; *Sierra Club v. Port of Townsend Paper Corp.*, 19 Envtl.L.Rep. 20532, 1988 WL 160580 (W.D.Wash.1988). This includes the requirement for public notice. In determining comparability, the Eighth Circuit stated that:

> in *Scituate* ... the comparability requirement may be satisfied so long as the state law contains comparable penalty provisions which the state is authorized to enforce, has the same overall enforcement goals as the federal CWA, provides interested citizens a meaningful opportunity to participate at significant stages of the decision-making process, and adequately safeguards their legitimate substantive issues. 949 F.2d at 556 n. 7. Under those circumstances, the state statute should be presumed comparable unless the facts of the specific case demonstrate that the state denied an interested party a meaningful opportunity to participate in the administrative enforcement process.

*Arkansas Wildlife Federation v. ICI Americas, Inc.*, 29 F.3d 376 (8th Cir.1994). Furthermore, as stated previously, the fact that a state chooses not to apply penalties, or to only apply light penalties, does not alter a finding of comparability. *Scituate* at 556.

■ The state laws and administrative rules under which DEQ issued the SFO and the penalty assessments against defendants—ORS Chapters 454, 468 & 468B, and OAR Chapter 340, Divisions 12 and 45—provide for procedures substantially similar to those provided in 33 U.S.C. § 1319(g).

Section 1319(g) provides for the following procedure: when the EPA Administrator determines that a person has violated any section of the CWA, the Administrator may assess a civil penalty. § 1319(g)(1). The amount of the penalty is determined pursuant to a schedule of penalties and certain aggravating and mitigating factors. § 1319(g)(2) & (3). The Administrator must provide public notice of any penalty proceeding, any interested person may submit written comments to the administrator related to the proposed penalty, and any interested person who submits written comments may request a hearing after the order is issued if they can show that a material issue was not considered by the administrator. § 1319(g)(4). The order of the agency is final and subject to judicial review within 30 days. § 1319(g)(5) & (8).

Under Oregon law, ORS 468B.050 gives DEQ the authority to issue NPDES permits. ORS 468.090(1) provides that once DEQ becomes aware or has any cause to believe that a person may be violating any condition of their NPDES permit, DEQ shall "by conference, conciliation or persuasion" endeavor to eliminate the source or cause of the pollution. Subsection (2) of that statute provides that if those efforts are not successful, then DEQ shall commence enforcement proceedings under ORS 183.310 et seq. Just as in the federal scheme, enforcement can occur through civil or criminal actions in the courts, or administrative proceedings resulting in administratively imposed civil penalties. ORS 468.100; 135. The amount of those penalties shall be determined pursuant to a schedule of penalties and certain aggravating and mitigating factors. ORS 468.140(1); 468.130. Additionally, alleged violators are entitled to notice and an opportunity to be heard in a contested case proceeding. ORS 183.413–470. Any person who has an interest in the outcome of the contested case proceeding, or whom DEQ determines is representing the public interest may participate in the hearing. ORS 183.310(6) (definition of a "party" in a contested case proceeding). Finally, any person "adversely affected or aggrieved" by a DEQ order is entitled to judicial review of that order. ORS 468.110; 183.480.

The CWA and the Oregon state laws are comparable. *See Arkansas Wildlife, supra.* Both seek the goal of eliminating pollution through penalty provisions including civil and

criminal sanctions and administrative penalties. Although there is no absolute requirement for public notice under Oregon law,[6] DEQ has the authority and discretion to provide for such notice or public involvement. ORS 468.120. Moreover, those persons who may be adversely affected or who represent the public interest are entitled to be involved in significant stages of the enforcement. "The only significant difference between [Oregon's] procedures and [the CWA] is that although the state statute authorizes DSL to conduct hearings and receive public input, it does not require public notice and opportunity for comment on a proposed enforcement action." *Saboe,* 819 F.Supp. at 917. The right to judicial review also ensures these rights are safeguarded. Though the notice requirements are not identical to those of the CWA, the District Court of Oregon has held that the provisions need not be identical. *Id.* at 918. So long as the Oregon procedures "adequately protect" the public interest in enforcement, the laws are comparable. *Id.* Thus, as Oregon law contains provisions similar to the CWA and offers adequate protection, the laws are comparable.

■ As the Eighth Circuit held in *Arkansas Wildlife,* where the state statute contains "comparable penalty provisions which the state is authorized to enforce," "the same overall enforcement goals," a meaningful opportunity to participate, and adequate safeguards, the statute is presumed comparable unless interested parties were *actually* denied a meaningful opportunity to participate. 29 F.3d at 381–82. Plaintiffs provided comments to DEQ regarding DEQ's intention to enter into a Stipulation and Final Order to which DEQ responded on December 1, 1993 (# 23, Affidavit of Susan Johnson, Exh. L). Following the entry of the SFO plaintiffs again commented to DEQ, this time requesting that the interim limits be lowered. DEQ responded to those comments by letter dated April 19, 1994. (# 23, Affidavit of Susan Johnson, Exh. M). In that letter, DEQ rejected plaintiffs' factual assertions, and denied plaintiffs' request that DEQ change the interim limits. As plaintiffs were given the opportunity to be heard, and DEQ responded, plaintiffs were provided with a meaningful opportunity to participate.

This court finds that despite the lack of *mandatory* public notice and participation, the DEQ acted pursuant to a law comparable to the federal law.

### 3. DEQ's Acts Constituted Diligent Prosecution

Plaintiffs argue that DEQ has not diligently prosecuted this matter and thus plaintiff's citizen suit is not precluded.

More than one circuit has recognized the need to defer to agency action. *See Arkansas Wildlife Federation,* 29 F.3d at 377–78; *Scituate,* 949 F.2d 552. In *Arkansas Wildlife Federation* the facts are very similar to the present case. 29 F.3d at 380–81. There the plaintiff argued failure to diligently prosecute because the state "repeatedly and unnecessarily abandoned nearly all of its enforcement powers, failed to address [defendant's] violations ... and assessed insignificant amounts of civil penalties." *Id.* However, the Eighth Circuit held that the state's actions constituted diligent prosecution. Similarly, in *Scituate* the state issued a compliance order in which defendants had to take remedial action but no penalties were assessed. 949 F.2d at 554. Again the First Circuit held the state had diligently prosecuted the matter.

■ Following the policy and goals of the CWA, the Eighth Circuit stated that courts must defer to the "expertise" of agencies enforcing environmental laws. "It would be unreasonable and inappropriate to find failure to diligently prosecute simply because defendant prevailed in some fashion or because a compromise was reached." *Arkansas Wildlife* 29 F.3d at 380. Here DEQ has sought to eliminate pollution through a settlement agreement with defendants. As a result of their action, defendants are building a new sewage treatment plant. Additionally some penalties have been imposed and DEQ may impose more penalties for future violations. The state is not required to assess

---

6. While under Oregon law alleged violators are entitled to notice in a contested case, there is no general provision for public notice to all interested parties.

penalties for every violation in order to diligently prosecute. *Saboe*, 819 F.Supp. at 918. Under these facts, this court finds diligent prosecution for the purpose of statutory preclusion.

### 4. Preclusive Effect Applies to All Alleged Violations

■ Plaintiffs claim that under § 1319(g)(6)(A) only those violations specifically addressed by the state are precluded. Plaintiffs argue therefore that since DEQ only addressed "a handful" of those violations in the SFO, a suit may be filed on the remaining violations.

In *Saboe*, the District Court of Oregon stated that citizen suits are not proper simply because the "plaintiff has more claims than were resolved by a prior government enforcement action, or because the plaintiff seeks higher civil fines than were levied by the government.... Plaintiffs are not entitled to a 'personalized' remedy in CWA citizens suits." 819 F.Supp. at 918 (citing *Connecticut Fund for the Environment v. Contract Plating Co.*, 631 F.Supp. 1291 (D.Conn. 1986)).

Plaintiffs' interpretation of the law would impede the goal of the statute and go against case law and policy which denies duplicative litigation, and supports agency discretion and ultimate remediation of the problem.

### 5. The CWA Bars Suits for Injunctive and Declaratory Relief and Civil Penalties

■ Plaintiffs argue that § 1319(g)(6)(A) bans citizen suits for civil penalties but not for injunctive and declaratory relief.

In *Scituate* the First Circuit held that § 1319(g)(6)(A) precluded suits for injunctive and declaratory relief as well as for civil penalties. 949 F.2d at 558. First the court noted that 33 U.S.C. § 1319(g)(6) bars citizen suits brought under 33 U.S.C. § 1365(a). The court then noted that § 1365 does not

distinguish between penalty actions and suits for injunctive relief.[7] The court stated that unlike the government enforcement provision, citizen suits are granted general jurisdiction for all civil relief. *Scituate*, at 557. In reading this general grant of jurisdiction with the language in *Gwaltney v. Chesapeake Bay Foundation*, 484 U.S. 49, 108 S.Ct. 376, 98 L.Ed.2d 306 (1987), regarding the supplemental nature of citizen suits, the First Circuit held that Section 1319 bars "all citizen actions" not merely civil penalties. *Id.* at 558. Furthermore, the First Circuit stated that limiting preclusion solely to civil penalties would mean that deference was given to government enforcement only where a penalty was sought in a civil action. Such a result, stated the court, would "not only be undesirable ... it would be absurd. Where literal interpretation of a statute would lead to an absurd result, the Court must strive to provide an alternative meaning that avoids the irrational consequence." *Id.* (citing *Green v. Bock Laundry Mach. Co.*, 490 U.S. 504, 527, 109 S.Ct. 1981, 1994, 104 L.Ed.2d 557 (1989)).

Plaintiffs cite a New York District Court case which determined that per the plain language of the statute, 33 USC 1319(g)(6) was intended as a limit solely on suits for civil penalties. *Coalition for a Liveable West Side, Inc. v. New York City Dept. of Env. Protec.*, 830 F.Supp. 194 (S.D.N.Y.1993). As *Coalition* fails to consider the absurdity of their interpretation in light of the ultimate purpose of the statute and the need for unimpeded enforcement by government agencies and because *Scituate* is logical, and comes from an appellate court, this court finds *Scituate* more persuasive. As such, I find that 1319(g)(6)(A) bans not only citizen suits for civil penalties, but suits for injunctive and declaratory relief as well.

### Conclusion

This case is precluded by DEQ's diligent prosecution under Oregon's comparable state law.[8] Therefore defendants' motion to dis-

---

**7.** 33 U.S.C. § 1365(a)(1) provides: "[A]ny citizen may commence a civil action on his own behalf ... against any person ... who is alleged to be in violation of [the Clean Water Act]."

**8.** It should be noted that plaintiffs conceded at oral argument that for plaintiffs to prevail on this motion a court would have to disagree with the First Circuit in *Scituate,* the Eighth Circuit in

miss for lack of subject matter jurisdiction (# 11) should be allowed and this action should be dismissed.

DATED this 3rd day of November, 1994.

*Arkansas Wildlife,* and the District Court of Oregon in *Saboe.*